Ronald L. and Jolene JACOBSON, husband and wife, Plaintiffs,

v.

WESTERN MONTANA PRODUCTION CREDIT ASSOCIATION, a corporation, and Mike Schmidthuber, Royal McConkey, J. Edwin Gilchrist, William Vann, and John Does VI through X inclusive, Defendants.

WESTERN MONTANA PRODUCTION CREDIT ASSOCIATION, a corporation, and Mike Schmidthuber, Royal McConkey, J. Edwin Gilchrist, and William Vann, Third-Party Plaintiffs,

v.

PIONEER COMMODITIES, INC., a corporation, and Dennis Richardson, an individual, Third-Party Defendants.

No. CV 84–242–M–RES.

United States District Court,
D. Montana,
Missoula Division.

Sept. 3, 1986.

William Hileman, Hedman, Hileman & LaCosta, Whitefish, Mont., Daniel Hileman, Murray, Kaufman, Vidal & Gordon, Kalispell, Mont., for plaintiffs.

Paul McCann, Williams Law Firm, Missoula, Mont., for McConkey and Gilchrist.

Ron Bender, Worden, Thane & Haines, Missoula, Mont., Gary Christiansen, Warden, Christiansen, Johnson & Berg, Kalispell, Mont., for other defendants.

## OPINION and ORDER

RUSSELL E. SMITH, District Judge.

Plaintiffs are Ronald L. and Jolene Jacobson, husband and wife. Defendants are Western Montana Production Credit Association, (hereafter PCA) and Mike Schmid-

thuber, Royal McConkey J. Edwin Gilchrist, and William Vann. The individual defendants filed a third party complaint seeking contribution or indemnity against Pioneer Commodities, Inc., (hereafter Pioneer) and Dennis Richardson.

The PCA was placed in receivership by an order of the Federal Land Bank of Spokane in 1985. This action was pending at that time. Now PCA contends that somehow the order of dissolution robs the plaintiff of the standing he had to bring this action when it was filed. I think this contention really means that the appointment of the receiver abated claims against the PCA.

■ Under 12 U.S.C. § 2183(b), the Farm Credit Administration is given power to provide for the liquidation of Production Credit Associations. The Act does not expressly empower the Farm Credit Administration to abate existing lawsuits. Acting under 12 C.F.R. § 611.1130 (1985), the Federal Land Bank of Spokane made a liquidation plan for the PCA. That plan contained no language abating existing lawsuits or giving the receiver appointed under it power to abate them. Had Congress placed in the Farm Credit Administration some power to require a bankruptcy type liquidation of claims against a Production Credit Association in receivership, a serious problem might arise as to whether Congress could constitutionally so alter creditors' rights. See *Northern Pipeline Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). But certainly, when Congress itself did not abate lawsuits against a Production Credit Association in liquidation, and when the Farm Credit Administration by its plan of liquidation did not provide such abatement, a court should not abate them. The defendants would liken the receivership here to a bankruptcy proceeding. They forget that the Bankruptcy Law itself contains elaborate provisions for the stay of lawsuits (*See* 11 U.S.C. § 362) and provides alternative methods of settling disputes.

The revised regulations governing the liquidation of associations as they appear in the 1986 Code of Federal Regulations (12 C.F.R. §§ 611.1160–1168 (1986)) give the receiver power to disallow claims (§ 611.1164), but no provision is made for a review of the action of the receiver.

I cannot believe that the Farm Credit Administration intended that its action of dissolution should in itself abolish creditors' rights. The absence of any provision for review of a disallowed claim suggests to me that the Farm Credit Administration intended that the normal channels for the resolution of disputes remain open. Section 611.1161(h) which authorizes the receiver to participate in suits indicates that the authors of the regulations realized that the receiver would be faced with lawsuits.

The motion of the PCA to dismiss on the ground that the proceedings are barred or stayed is denied.

Motions for summary judgment have been filed by all of the defendants. The facts judged in the light most favorable to the plaintiff are as follows.[1] The plaintiff met Mike Schmidthuber in the spring of 1979 when he arranged for him to pasture some horses for a third party. Schmidthuber was at that time an agent of the PCA and actively soliciting accounts for them. Plaintiff had a cow and calf operation. Schmidthuber persuaded him to finance with the PCA. He also advised the plaintiff to sell his cow and calf herd, which he did, and that in the future plaintiff should deal in yearlings and futures contracts for yearlings. The plaintiff at that time was totally ignorant of the operation of the futures market or the risks connected with it. Schmidthuber told him that he would direct his purchases of futures and advise him when to buy and sell.

As a part of the plan, Schmidthuber arranged for the plaintiff and other ranchers in the area to meet with Dennis Richard-

---

**1.** I have used the word "plaintiff" in the singular because it is clear from the deposition of both Ronald and Jolene Jacobson that he acted for both of them. It is on the basis of Ronald's statements that the facts are determined.

son, a commodities broker who acted as an agent for Pioneer Commodities. It was explained that before plaintiff dealt in the futures market it would be necessary for some third person to become financially responsible for any market calls that the dealings in futures might engender. After the meeting, the plaintiff signed an agreement entitled "Hedging Supplement to Loan and Security Agreements." That agreement, executed by plaintiff, Pioneer and PCA provided in part:

WHEREAS, The Association and the Borrower have agreed upon an operating loan from the Association to the Borrower; and

WHEREAS, one of the purposes of such loan will enable the Borrower to hedge inventory of collateral through Account No. 56013 with the Brokerage Firm of Pioneer Commodities, whose mailing address is 30 E. Washington, Kalispell, Montana 59901, herein called the Broker, in accordance with the terms and conditions contained in this Supplement.

\* \* \* \* \* \*

1. *Hedging Program*

a. Borrower acknowledges that it is and shall be the Borrower's sole decision and responsibility to initiate the hedging program.

\* \* \* \* \* \*

e. Association shall advance the necessary funds directly to the Broker for initial margin requirement and future margin calls to maintain the hedge contracts. Such funds will be charged to the Borrower's loan account advances.

\* \* \* \* \* \*

g. Decisions as to whether the Borrower shall settle future contracts by delivery or by liquidating contracts shall be made by the Borrower subject to prior approval of an authorized PCA officer, (as stated above in section (b)).

\* \* \* \* \* \*

3. *Miscellaneous*

a. Borrower agrees to employ loanable funds for the sole purpose of making hedging transactions to protect the Borrower's inventory of collateral and shall not employ said funds for transactions of speculation or investment in commodities futures. Borrower assumes all financial risks in the making of such hedging transactions.

\* \* \* \* \* \*

Shortly thereafter, Schmidthuber called plaintiff on the telephone and said "I've put you into it" or "get into it now." That call prompted plaintiff to buy six (6) futures contracts. Thereafter, at Schmidthuber's direction and with PCA financing, he bought yearlings and contracts for the future delivery of yearlings. He was not hedging a present position but was speculating that the market would go up. It did not and he lost substantial sums of money. What is said above is taken from plaintiff's answers to interrogatories and his deposition.[2]

*Plaintiff's Counts I and II.*

Count I alleges that the PCA breached the contract entitled "Supplement to Loan and Security Agreements" because it did not attempt to hedge plaintiff's yearlings with the purchase of yearling futures. In the written contract, PCA does not agree to do anything except lend money. In the contract as written, it was the obligation of the borrower to initiate the hedging program, to decide when and how futures contracts should be liquidated and to bear all financial risks.

In Count II, plaintiff contends that the written agreement was in effect modified by oral evidence. If it is assumed that a written contract, despite the parole evidence rule, may be modified by oral evi-

2. The plaintiff on at least 25 occasions adopted the answers to interrogatory number 23 by reference. Separate interrogatories were directed to plaintiff as to each defendant as to each count of the complaint, and no defendant other than Schmidthuber and the PCA through him was said to have participated in transactions.

dence so as to require a party to be bound by obligations expressly repudiated in the writing, still the plaintiff may not recover here on the basis of contract. A contract is an agreement to do or not to do a certain thing. Mont.Code Ann. § 28–2–101 (1985). Was there an agreement that defendants would bear the risk of loss?

According to the plaintiff, Schmidthuber persuaded him to sell his cows, to deal in yearlings, to finance with the PCA, to execute the hedging agreements, and to go into the futures market. Schmidthuber represented that he would advise him. These are the kinds of words which were used: "Well, when we was first starting it, Mike [Schmidthuber] told us he was going to do everything ... we wasn't to touch it" and again "He would take care of the time to place the orders and when to get them out of there and what to do because we didn't know the first thing about it ourselves." Schmidthuber, and through him, the PCA, did agree to advise plaintiff in the purchase and sale of animals and of futures contracts. But there are no words which even suggest an agreement that Schmidthuber and the PCA would bear the risk of loss.

 The obligation of the PCA was that of a fiduciary and the law would imply a duty to use reasonable care in the giving of advice. In this case, a jury might find a breach of an obligation imposed by law. In short, it may be that Schmidthuber and the PCA were guilty of negligent misrepresentation. *See Brown v. Merrill Lynch,* 197 Mont. 1, 640 P.2d 453, 458–59 (1982). Where there is a breach of a promise implied by law, then the remedy lies in tort and not in contract. In *Bennett v. Dow Chemical Co.,* — Mont. —, 713 P.2d 992, 995 (1986), the Montana Supreme Court said:

> Appellant's breach of warranty claims include breach of the implied covenants of good faith and fair dealing, fitness for a particular purpose, merchantability and performance in a workmanlike manner. These covenants are imposed by law regardless of contract. As such, and ab-

sent contract, breach of the implied covenants sound in tort-not contract.

The defendants' motions for summary judgment on Counts I and II of the third amended complaint are granted, because there was no contract, oral or written, obligating the defendants to bear the risk of loss.

*Plaintiff's Count III.*

 RICO itself contains no limitations. Under those circumstances, this court looks to the law of the forum for an appropriate limitations period. *Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir.1984). I find that Montana's statute of limitations for claims most analogous to RICO civil claims is Mont.Code Ann. § 27–2–211(1)(c) which provides a two year limitation for "liability created by statute other than a penalty or forfeiture." This section, except that it expresses a different period of limitation, is identical with that portion of Cal.Civ.Proc. Code § 338 which governs RICO actions in California. *Compton,* 732 F.2d at 1433.

I considered the statute of limitations provided by Mont.Code Ann. § 27–2–215 which provides a five year limitation for "actions for relief not otherwise provided for," but chose Mont.Code Ann. § 27–2–211(1)(c) because the action under RICO is based on a statute. Moreover, the California statute of limitations for "actions for relief not otherwise provided for," was not chosen in *Compton.* 732 F.2d at 1433.

 State law governs the choice of a period of limitations but the time of the accrual is determined by federal law. Under federal law, a cause of action occurs "when the plaintiff knows or has reason to know of the injury which is the basis for his action." *Id.* From the plaintiff's deposition, and the answers to interrogatories, it appears that plaintiff's losses all occurred in the year 1980 and that he knew of the losses and when they occurred. He also knew that the losses were caused because Schmidthuber's advice as to hedging was wrong.

The defendants' motions for summary judgment on Count III of the third amend-

ed complaint are granted on the ground that the action is barred by the statute of limitations.

*Count IV.*

Count IV of the third amended complaint charges fraudulent misrepresentations. Mont.Code Ann. § 27–2–203 provides that actions for relief on the ground of fraud must be brought within two years after the discovery of the fraud.

In this case while plaintiff may have acted on Schmidthuber's advice, plaintiff was the one who authorized each purchase and each sale. As soon as a loss occurred, he knew it. All of the losses occurred prior to the end of 1980. At some time in 1980, plaintiff attended a school in hedging. As to that, his testimony is:

A. I don't remember just when that was, whether it was spring or summer or fall. It must have been the spring or summer of 1980 when he put that on.

Q. And at least by that time you were aware that Schmidthuber, in your opinion at least, hadn't managed—

A. Yeah. I had went through this here and learned a little about it and how it worked a little bit.

Q. You concluded he hadn't managed it right?

A. Uh-huh.

Q. Are you saying that he was deceptive or deceived you in the way he managed that hedging program?

A. Yeah, he did it wrong, I know that.

It may be as plaintiff claims that he did not have knowledge of his legal rights until he consulted a lawyer but he did have knowledge of his loss and, if what the defendants did amounted to fraud, he had knowledge of that. In Montana, that is sufficient. *Kerrigan v. O'Meara,* 71 Mont. 1, 227 P. 819 (1924), *Bennett v. Dow Chemical Co.,* —— Mont. —— 713 P.2d 992 (1986).

The defendants' motions for summary judgment as to Count IV are granted for the reason that the action is barred by the statute of limitations.

*Counts V, VI, and VII.*

These counts are all based on either negligence or fraud and are, for the reasons heretofore stated, barred by Mont.Code Ann. § 27–2–203 and –204.

The defendants' motions for summary judgment as to Counts V, VI, and VII are granted.

*Count VIII.*

This count alleges that the defendants acted in bad faith and seek punitive damages. Since the complaints for actual damages are dismissed, this count should likewise be dismissed.

The defendants' motions for summary judgment as to Count VIII are granted.

*The Third Party Complaint.*

The defendants have filed third party complaints which in general allege that the third party defendants, Pioneer and Dennis Richardson, negligently opened a brokerage account for the plaintiff and negligently failed to warn and advise the plaintiff of the risks of hedging and that such was the proximate cause of plaintiff's losses. They seek indemnification or, in the alternative, contribution from the third party defendants.

The opinion in the case, *Seminole Electric Cooperative, Inc. v. Anthony Tanner,* 635 F.Supp. 582 (M.D.Fla.1986) decided by the United States District Court for the Middle District of Florida, has come to my attention. It holds that in a RICO action, there is no right to indemnity or contribution from a third person.

That opinion seems to be well-reasoned and on the authority of it, I, of my own motion, hold that the third party complaint in this case should be dismissed, insofar and only insofar as it seeks to hold the third party defendants liable for indemnity or contribution on the RICO claims.