BOOCHEVER, Circuit Judge:
 

 Miller Mining Company and Michael Miller, its guarantor, appeal a deficiency judgment entered against them by the district court. They allege that Ingersoll-Rand Financial Corporation did not conduct the resale of collateral it repossessed from Miller Mining in a commercially reasonable manner. Failure to do so, they contend, gave rise to a presumption that the proceeds of sale were equal to the claimed deficiency. We agree. We also conclude that the automatic bankruptcy stay applies to Miller Mining Company’s appeal but does not apply to Michael Miller.
 

 FACTS
 

 On October 17, 1979, Miller Mining Company purchased a used Wagner, Model #ST-8 front-end loader (loader), for $79,-000 plus tax for a total of $83,740. It paid $20,935 down and executed a security agreement in favor of Ingersoll-Rand Financial Corporation for the balance of $62,-805. The security agreement provided for the payment of twenty-four equal monthly installments of $3,115 commencing on December 1, 1979. In the event of default, Ingersoll-Rand was to retain all prior payments as liquidated damages.
 

 The then president of Miller Mining, Michael Miller, acting as an individual, signed a guaranty for the debt incurred by Miller Mining. The provisions of both the guaranty and the security agreement were to be construed and enforced in accordance with the laws of the State of New Jersey. The Uniform Commercial Code was designated in the security agreement to govern the rights, duties, and remedies of the parties.
 

 On October 9, 1980, Ingersoll-Rand declared a default when Miller Mining failed to make its August and September payments. The future payments totaling $49,-933.73 were accelerated in accordance with the security agreement. Within one month, Miller Mining delivered the loader
 
 *1426
 
 to Ingersoll-Rand’s premises where it was kept in an equipment yard devoted to the sale and service of heavy equipment.
 

 The loader is a truck used in underground mining to carry ore to the surface. The condition of the loader upon surrender by Miller Mining is disputed. Mr. Miller testified that the vehicle was operating during the summer of 1980 and continued to be in use by the company when payments were stopped due to a cash shortage. He asserts that the equipment developed hydraulic and transmission problems while in the possession of Ingersoll-Rand. Inger-soll-Rand, on the other hand, contends that the impaired condition of the loader was created by Miller Mining. The district court found that Ingersoll-Rand did not fully examine the property upon surrender to determine its condition.
 

 Efforts by Ingersoll-Rand to sell the loader did not generate any interest until twenty months after repossession when a Canadian company purchased the loader as scrap for $6,000. Ingersoll-Rand filed a claim seeking recovery of the principal, $55,272.88, plus interest, attorneys’ fees, and costs of suit.
 

 In a trial without a jury, the district court found that Ingersoll-Rand did not make all reasonable repairs to prepare .the property for resale, and did not maintain the property under the most reasonable conditions prior to its sale. Otherwise, the court found that Ingersoll-Rand disposed of the property in a commercially reasonable manner. The court rendered judgment for Ingersoll-Rand and awarded damages in the amount of $28,000, plus interest, attorneys’ fees, and costs. Several months later, Miller Mining filed a bankruptcy petition for Chapter 11 relief. Michael Miller concedes that a guarantor’s liability is coextensive with that of the party primarily liable.
 

 ANALYSIS
 

 I. Automatic Bankruptcy Stay
 

 Before reaching the merits of this case, we must decide whether this appeal is stayed due to the filing of a bankruptcy petition by Miller Mining. Section 362 of the Bankruptcy Code provides:
 

 (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
 

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding
 
 against the debtor
 
 that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title....
 

 11 U.S.C. § 362(a) (Supp. III 1985) (emphasis added). Although the instant appeal is clearly a continuation of a judicial proceeding, a question arises in the interpretation of the phrase “against the debtor.” Because this appeal is brought by the debtor, it could be argued that the language of section 362 does not apply.
 

 We agree, however, with the decisions of other circuits which have stayed appeals by the debtor when the original proceeding was brought against the debtor. The Sixth Circuit in
 
 Cathey v. Johns-Manville Sales Corp.,
 
 711 F.2d 60, 62 (6th Cir.1983),
 
 cert. denied,
 
 - U.S. -, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986), followed the Third Circuit’s rationale stating:
 

 In our view, section 362 should be read to stay all appeals in proceedings that were
 
 originally brought
 
 against the debtor, regardless of whether the debtor is 'the appellant or appellee. Thus, whether a case is subject to the automatic stay must be determined at its inception. That determination should not change depending on the particular stage of the litigation at which the filing of the petition in bankruptcy occurs.
 

 * * * * * *
 

 2. Difficulties with the “appellant-ap-pellee” approach to section 362 would arise even if only one party appealed. We can hypothesize an appeal by a debtor from an adverse judgment rendered in an action brought against it
 
 *1427
 
 by one of its creditors. If the appeal is permitted because it is an appeal “by” the debtor, and the debtor prevails on the appeal, we question the effect of such an interpretation if the creditor decides to bring the case to a higher court. Is this second level of appeal then stayed because the appeal is not one “against” the debtor? The unfairness of such an approach is obvious.
 

 Id.
 
 (quoting
 
 Association of St. Croix Condominium Owners v. St. Croix Hotel,
 
 682 F.2d 446, 449 (3d Cir.1982)).
 

 Relief from an automatic stay is possible, however, under section 362(d). The bankruptcy court, under this section, may lift a stay upon request of a party in interest following notice and a hearing. 11 U.S.C. § 362(d) (Supp. III 1985);
 
 Cathey, 711
 
 F.2d at 62. In the instant case, the bankruptcy court has not granted relief from the stay and none of the exceptions under subsection (b) is applicable. Therefore, Miller Mining is prevented from proceeding with this appeal.
 

 The stay of the appeal, however, does not extend to Michael Miller as guarantor. In the absence of special circumstances, stays pursuant to section 362(a) are limited to debtors and do not include non-bankrupt co-defendants.
 
 See Teachers Ins. and Annuity Ass’n of Am. v. Butler,
 
 803 F.2d 61, 65 (2d Cir.1986). In
 
 Otoe County Nat’l Bank v. W & P Trucking, Inc.,
 
 754 F.2d 881, 883 (10th Cir.1985), the court refused to extend the automatic stay to a guarantor under section 362. The. possibility of a stay, the court suggested, may exist under section 105 which provides: “The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” 11 U.S.C. § 105(a). Due to the absence of any order from the bankruptcy court staying proceedings as to the guarantor, Michael Miller’s appeal is properly before this court.
 

 II. Standard of Review
 

 The Uniform Commercial Code as enacted in New Jersey states that “every aspect of the disposition [of repossessed collateral] including the method, manner, time, place and terms must be commercially reasonable.” N.J.Stat.Ann. § 12A:9-504(3) (West 1962 & Supp.1986). A finding by the district court that the sale is commercially reasonable is a finding of fact and will be upheld by a reviewing court unless it is clearly erroneous. Fed.R.Civ.P. 52(a);
 
 see C.I.T. Corp. v. Duncan Grading and Constr., Inc.,
 
 739 F.2d 359, 362 (8th Cir.1984). A finding of fact is “clearly erroneous” and may be set aside when “the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.”
 
 United States v. United States Gypsum Co.,
 
 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).
 

 III. Merits
 

 The district court found that Inger-soll-Rand conducted certain aspects of the resale in a manner that was not commercially reasonable, although it found that other aspects were reasonable. The court did not state whether the Code had been violated but awarded only a portion of the recovery sought by Ingersoll-Rand. Although the Code does not define with specificity the components of a commercially reasonable sale, case law has developed which provides some insight into when a violation of the Code has occurred.
 

 In
 
 Franklin State Bank v. Parker,
 
 136 N.J.Super. 476, 481-82, 346 A.2d 632, 635 (Union County Ct.1975), the Court held that the bank had failed to satisfy the “good faith” (N.J.Stat.Ann. § 12A:1-203 (West 1962)) and “commercially reasonable” standards when it failed to make a casual inspection following repossession of an automobile. Minor repairs, the court found, would have resulted in the automobile being mechanically operational. Ingersoll-Rand did not present any evidence at trial showing it examined the property upon surrender or made any repairs. At the time of resale, however, the loader had obvious mechanical problems.
 

 The U.C.C. allows a secured party after default to sell “the collateral in its then condition or following any commercially
 
 *1428
 
 reasonable preparation or processing.” N.J.Stat.Ann. 12A:9-504(1). We believe that lack of knowledge as to the general condition of repossessed expensive heavy equipment can have as adverse an impact on the resale as in the case of automobiles. A failure to examine and make minor repairs can in some cases unduly restrict the marketing potential of the collateral rendering the resale commercially unreasonable.
 
 See Franklin State Bank,
 
 136 N.J. Super. at 482, 346 A.2d at 635.
 

 In addition to lack of preparation for resale, the district court also found that Ingersoll-Rand did not maintain the property under the most reasonable conditions prior to sale. In
 
 Bank Josephine v. Conn,
 
 599 S.W.2d 773, 775 (Ky.Ct.App.1980), the court found that the value of two coal trucks was substantially and materially reduced when the creditor allowed their condition to deteriorate in the four to five weeks it had them in its possession. Inger-soll-Rand had the loader in its possession for approximately twenty months. There was evidence that during this period it was subjected to the elements and that little effort was made to safeguard the vehicle.
 

 These factual findings of the district court were not clearly erroneous and, as a result, we hold that Ingersoll-Rand violated the U.C.C. for failure to dispose of the collateral in a commercially reasonable manner. Because the parties agreed that their contract would be enforced in accordance with the laws of New Jersey, we need not decide whether the district court erred in its ruling that in all other ways the disposition of the loader was commercially reasonable. As discussed below, New Jersey case law does not appear to reduce the debtor’s liability in proportion to the secured party’s failure to comply with the Code.
 

 We note in passing, however, that some other aspects of the sale were highly questionable. For example, the loader was sold after only one bid and for an amount less than one-tenth of the original contract. Gross inadequacy of price may be considered with other factors in determining the validity of a sale.
 
 See Franklin State Bank,
 
 136 N.J. Super. at 481, 346 A.2d at 635. Advertising of the loader was, for the most part, carried out in conjunction with numerous other pieces of equipment, reducing the chances that potential buyers would be attracted to this particular offer of sale. In addition, Ingersoll-Rand took twenty months to resell the loader.
 

 In
 
 Franklin State Bank,
 
 136 N.J.Super. at 481-83, 346 A.2d at 635-36, the court discussed a section 9-504(3) violation. The creditor failed to give notice and dispose of repossessed collateral in a reasonable manner. The court stated that a presumption arose that the collateral was worth the amount of the debt. Because the creditor had failed to sustain the burden of proof as to fair value, his right to a deficiency was denied.
 
 See also T & W Ice Cream, Inc. v. Carriage Barn, Inc.,
 
 107 N.J.Super. 328, 337, 258 A.2d 162, 167 (Bergen County Ct.Law Div.1969).
 

 Accordingly, Ingersoll-Rand's failure to dispose of the collateral in a reasonable manner created a presumption that the collateral was worth the amount of the debt. Ingersoll-Rand asserts that the resale price of $6,000 was the fair and reasonable value of the loader because no other party placed a bid for the property or showed any interest. No additional evidence, however, was presented at trial which would establish that this amount represented the value of the equipment.
 

 IV. Conclusion
 

 The resale of the loader was not accomplished in a commercially reasonable manner as required by section 9-504(3). We reverse the district court’s deficiency judgment, and hold that Ingersoll-Rand failed to meet the burden of proving market value. The value of the collateral, therefore, is presumed to be equal to the debt, resulting in the elimination of any deficiency.
 

 AFFIRMED in part, REVERSED in part.