The FEDERAL LAND BANK OF SPO-
KANE, a corporation, Plaintiff,

v.

Theodore S. STILES and Janice L. Stiles,
husband and wife; Theodore S. Stiles,
Jr. and Jane Doe Stiles, husband and
wife; United States of America, acting
through the Farmers Home Adminis-
tration; Mobil Oil Corporation; West-
ern Montana Production Credit Associ-
ation, a corporation; Hunt Oil Compa-
ny; and Federal Land Bank Associa-
tion of Missoula, a corporation, De-
fendants.

No. CV 86–69–M–CCL.

United States District Court,
D. Montana,
Missoula Division.

March 1, 1988.

W. Arthur Graham, Graham Law Firm, Missoula, Mont., for plaintiff.

Brian J. Smith, Milodragovich, Dale & Dye, Missoula, Mont., Ronald A. Bender, Martin S. King, Missoula, Mont., R. Alan Wight, Richard A. Edwards, Mark A. Anderson, Portland, Or., for defendants.

Charles Noack, Dallas, Tex., for Hunt Oil Co.

Kris McLean, Asst. U.S. Atty., Butte, Mont., for U.S.

LOVELL, District Judge.

This is an action to foreclose a real estate mortgage executed in 1978 by defendant Theodore S. Stiles and his now-deceased wife, Martha A. Stiles. The defendants are Theodore S. Stiles; his present wife, Janice L. Stiles; his son and daughter-in-law, Theodore S. Stiles, Jr., and Jane Doe Stiles (subsequently identified as Cheryl L. Stiles), who are alleged to reside on the premises; the United States Farmers Home Administration, which is alleged to hold an inferior mortgage; the Western Montana Production Credit Association, which is alleged to hold an inferior mortgage; the Federal Land Bank Association of Missoula, which is alleged to claim some interest in the property; Mobil Oil Corporation, which is alleged to hold an oil and gas lease on the premises; and Hunt Oil Company, which is alleged to hold an oil and gas lease on the premises.

The complaint alleges that Stiles is in default under the terms of the promissory note, and seeks judgment in the amount of $171,179.53, together with accrued interest, and all sums advanced by plaintiff for taxes, insurance, and other costs. Plaintiff further seeks retirement of stock owned by the Federal Land Bank of Missoula and pledged as security for said loan, and foreclosure of the mortgage with right of deficiency judgment.

Defendant Hunt Oil Company filed a disclaimer of interest on March 10, 1986, prior to removal of the case to this court. The default of Mobil Oil was entered October 7, 1986. There has been no appearance by defendant Federal Land Bank Association of Missoula. All other defendants have answered.

Defendants Stiles have filed a counterclaim against plaintiff as well as cross-claims against the Western Montana Production Credit Association (PCA). In turn, the PCA has cross-claimed against Stiles, seeking foreclosure of its mortgage and security interest given by Mr. Stiles, Sr. and Mr. Stiles, Jr., in real and personal property. The matter is before the court on the PCA's motion to dismiss the Stiles cross-claims.

In Count One of the cross-claim against the PCA, Stiles asserts that the PCA is indebted to him for work he performed at PCA's request on a caterpillar tractor owned by Stiles' neighbor which was being sold at a PCA auction.

Count Two of the cross-claim alleges that in 1984, PCA agents inspected Stiles' grain bins and failed to secure adequately the top to the grain bin, causing it to be blown open by wind resulting in moisture damage and spoilage of 2500 bushels of grain.

Count Three alleges that Stiles is the holder and owner of Class B stock required for membership in the PCA. In December 1984, the B stock was frozen. Stiles alleges that PCA has breached a fiduciary obligation by failing to provide adequate information regarding the status of equities in the PCA and by failing to inform Stiles of its impending collapse. He seeks damages for interest, loss of value in capital equities, loss of value of real estate and machinery, and mental distress.

Count Four alleges that the PCA has breached its duty of care owed to Stiles in connection with the advice given and the continual loans made to him throughout the period of his membership in the PCA.

Count Five of the cross-claim alleges that the PCA continued to make loans to Stiles even though it had actual knowledge of his deteriorating financial condition, amounting to negligence on the part of the PCA as a lending institution.

In Count Six, Stiles alleges that the PCA has compromised loans to other members and borrowers, thereby diminishing the value of Class B stock held by Stiles, to his damage.

Count Seven alleges that the PCA owed Stiles a duty to deal with him in good faith, and breached this duty in several particulars, resulting in damage to Stiles.

The cross-claim also contains separate allegations of Theodore S. Stiles, Jr., and his wife. Stiles, Jr., alleges that during the early part of 1984, a meeting was held between he and the PCA, at which time the PCA requested him to remove his name from the PCA documents. The PCA represented that upon receipt of a financial statement showing that Stiles, Jr., had no interest in the subject property, the PCA would remove the names of Stiles, Jr., and Cheryl Stiles from the PCA documents. Stiles, Jr., alleges that although he complied fully with the PCA's request, it failed to remove his name, resulting in his being named a defendant in this action. He alleges that this failure constitutes a breach of duty, with resultant damage.

The PCA moves to dismiss the cross-claims of the Stiles defendants on several grounds.[1]

Shortly before hearing, it was brought to the court's attention that Stiles, Jr., had filed a petition for relief under Chapter 7 of Title 11, United States Code, with the United States Bankruptcy Court for the District of Montana. The parties were allowed ten days to file supplemental briefs addressing the applicability to this action of the automatic stay provisions of the bankruptcy code. Thereafter, on December 7, 1987, the Bankruptcy Court granted the motion of the Federal Land Bank of Spokane for relief from the automatic stay.

The first issue with which the court is concerned, then, is whether action should be stayed on the cross-claims between the defendants or any of them, including PCA's motion to dismiss Stiles' cross-claims. The Bankruptcy Court's order states that relief from the automatic stay "is granted to allow the FLB to foreclose on any interest of the Debtors in the real property and upon further condition that the cross-claim of the debtors against the PCA shall be severed from the foreclosure action so that the Trustee may determine whether it constitutes property of the Debtors' estate." *In re Ted S. Stiles*, No. 87–20694 (Bk.Mont. Dec. 7, 1987). Based upon this order, together with the provisions of 11 U.S.C. § 362(a), all proceedings on all cross-claims between the Western Montana PCA and Ted S. Stiles, Jr., and Cheryl L. Stiles (Stiles, Jr.) shall be STAYED pending further order. The parties shall keep the court apprised of developments in the bankruptcy proceedings relevant to this stay order.

■■■ The court next addresses the issue whether the stay should be extended to the cross-claims between the PCA and Ted S. Stiles and Janice Stiles (Stiles, Sr.). "In the absence of special circumstances, stays pursuant to section 362(a) are limited to

---

The PCA went into liquidation in January, 1985, and is under the supervision of the federal intermediate credit bank under the Farm Credit Act of 1971. As used herein, the term "PCA" refers to this defendant in its liquidation status.

debtors and do not include non-bankrupt co-defendants." *Ingersoll–Rand Financial Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir.1987). Such special circumstances do not exist merely because the co-defendant is a guarantor, *id.*, or jointly liable on a debt with the debtor. *Teachers Insurance and Annuity Ass'n. of America v. Butler*, 803 F.2d 61, 65–66 (2d Cir. 1986). *Accord Otoe County National Bank v. W & P Trucking, Inc.*, 754 F.2d 881, 883 (10th Cir.1985). *But see A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, (4th Cir.1986) (stay against co-defendants allowed where continuation of litigation would frustrate or thwart reorganization efforts). Although 11 U.S.C. § 105(a) has been held to authorize a stay order as to a co-defendant, *Ingersoll–Rand*, 817 F.2d at 1427, no such order has been entered in the Stiles, Jr., bankruptcy proceedings. Accordingly, the court concludes that proceedings on claims between the PCA and Stiles, Sr., are not subject to stay as a result of the Stiles, Jr., bankruptcy proceedings.

Having so ruled, the court proceeds to the merits of PCA's motion to dismiss the cross-claims of Stiles, Sr.[2]

The court judges Stiles' cross-claim by the same standards used in determining the sufficiency of a complaint. A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In determining the sufficiency of the cross-claims, the court interprets the same in the light most favorable to the Stiles. *Russell v. Landrieu*, 621 F.2d 1037, 1039 (9th Cir. 1980).

### *Lack of Standing*

■ PCA claims that borrowers have no standing to challenge Farm Credit System regulations or to contend that production credit associations were not properly liquidated and stock frozen. PCA asserts that there is no duty under the Farm Credit Act to individual borrowers and that, as share-holders, the borrowers cannot sue to recover the lost value of their stock.

In response, the Stiles claim that their cross-claim does not challenge the Farm Credit Administration's authority to supervise and direct liquidation of a production credit association, nor does it seek to recover the amount invested in Class B stock. Stiles claim that they are not alleging violations of the Farm Credit Act, but are claiming damages for injuries traceable to the wrongful conduct of the PCA in its dealings with them.

There are three requirements the Stiles must satisfy in order to establish standing to raise the cross-claims:

1. they must allege injury that is "distinct and palpable," and not "abstract," "conjectural," or "hypothetical;"

2) the injury must be "fairly traceable" to the PCA's allegedly unlawful conduct; and

3) the injury must be likely to be redressed by the requested relief.

*General Motors v. California Board of Equalization*, 815 F.2d 1305, 1307 (9th Cir. 1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983), and *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)).

The injuries alleged by Stiles herein range from monies owed Mr. Stiles by the PCA for services performed at its request to consequential damages arising out of the PCA's alleged breach of the implied covenant of good faith and fair dealing. Stiles seeks damages for PCA's alleged negligence and violation of fiduciary and other duties. If proven, Stiles' claims would entitle them to damages which could be offset against the debt owed to the PCA. "Such real economic injuries have long been recognized as sufficient basis for standing." *General Motors v. Calif. Bd. of Equalization*, 815 F.2d at 1307. Thus, the court concludes that Stiles have satisfied the first requirement for standing.

---

**2.** Hereafter, use of the name "Stiles" refers only to Ted S. Stiles, Sr., and Janice Stiles.

The court next considers whether the injuries of which Stiles complain are fairly traceable to the PCA's conduct. The PCA cites *Harper v. Farm Credit Administration*, 628 F.Supp. 1030, 1032–33 (D.Or. 1985), in which the court held as speculative plaintiffs' allegation that the lack of proper regulations governing PCAs was the cause of the foreclosure action. Additionally, the court held that "plaintiffs' assertions that their foreclosure injury would be redressed by adoption of proper regulations is ... speculative at best." *Id.* at 1033.

In contrast, Stiles do not allege that the foreclosure of their mortgage is attributable to the absence of regulations. Rather, Stiles allege claims ancillary to the foreclosure but arising out of their relationship with the PCA. Each claim alleges specific tortious conduct on the part of the PCA and, at least for a determination of standing, is sufficient to show that the alleged injuries are fairly traceable to such conduct.

Finally, the court asks whether Stiles' claimed injuries are likely to be redressed by the requested relief. As noted earlier, Stiles seek damages for PCA's alleged tortious conduct which, if proven, could be used to offset the amounts due and owing on the mortgage. The connection between the injuries alleged and the relief sought is not speculative and meets the standing requirement of redress.

The court therefore concludes that Stiles have standing to bring their cross-claims against PCA.

### Jurisdiction

PCA asserts that because liquidation of a production credit association is "commended" by statute to the supervising agency, courts have no jurisdiction to interfere in the process of winding up the business of this federal instrumentality. Moreover, because the state court from which this case was removed lacked jurisdiction to hear the cross-claims, this court cannot obtain "derivative" jurisdiction over those claims upon removal.

Cross-claims between defendants are governed by Fed.R.Civ.P. 13(g), which provides in pertinent part:

A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.

■ There is no question that this court properly is vested with subject matter jurisdiction over the original action, pursuant to 28 U.S.C. §§ 2410 and 1444. Cross-claims are within the ancillary jurisdiction of the court, and independent jurisdictional grounds are not required. *Jones v. Illinois Dept. of Rehabilitation Services*, 689 F.2d 724, 732 (7th Cir.1982). In order to come within the court's ancillary jurisdiction, however, such claims must be closely related to the original action. *Allstate Ins. Co. v. James*, 779 F.2d 1536, 1539 (11th Cir. 1986).

Interpreting the same "transaction or occurrence" language contained in Rule 13(a), this court has applied the "logical relationship" test. *Taggart v. Rutledge*, 657 F.Supp. 1420, 1432 (D.Mont.1987); *Springs v. First National Bank of Cut Bank*, 647 F.Supp. 1394, 1386 (D.Mont.1986), *aff'd*, 835 F.2d 1293 (9th Cir.1988). *See also, Julian v. Mattson*, — Mont. ——, 710 P.2d 707, 709 (1985). Under Rule 13(a) of the Montana Rules of Civil Procedure, identical to its federal counterpart, "transaction" has been defined as

that combination of acts and events, circumstances and defaults, which viewed in one aspect, results in the plaintiff's right of action, and viewed in another aspect, results in the defendant's right of action ..., and it applies to any dealings of the parties resulting in wrong, without regard to whether the wrong be done by violence, neglect, or breach of contract.

*Julian*, 710 P.2d at 710 (quoting *Scott v. Waggoner*, 48 Mont. 536, 545, 139 P. 454, 456 (1914)). The Supreme Court of Montana has held that claims of lender misconduct are compulsory counterclaims to a complaint for deficiency judgment. *First*

*Bank, (N.A.) Western Montana v. District Court for Fourth Judicial District,* — Mont. ——, 737 P.2d 1132, 1136 (1987). The Ninth Circuit Court of Appeals, applying Montana law, recently held that claims of negligence against a mortgagee are compulsory counterclaims in a foreclosure proceeding. *Springs,* 835 F.2d at 1296.

█ Clearly, had PCA instituted foreclosure proceedings against the Stiles, the claims asserted by Stiles herein would be compulsory counterclaims. PCA argues, however, that the cross-claims do not relate to the original action or to the property which is the subject thereof. The "transaction" in this case is the financing of Stiles' property and operation. *Springs,* 835 F.2d at 1296. The cross-claims against PCA are logically related to that transaction. Moreover, under the procedural circumstances of this case, it is illogical to view Stiles' cross-claims in a vacuum. The cross-claim of PCA directly involves the property which is the subject of the original action, and as a practical matter, is a foreclosure action within a foreclosure action. Even if Stiles' cross-claims could be pursued in a separate action, it serves the interests of judicial economy to have all claims adjudicated in a single proceeding. *Julian,* 710 P.2d at 709.

### Immunity

PCA claims that, as an instrumentality of the United States, it is immune from a damage action of this nature. PCA cites *Matter of Sparkman,* 703 F.2d 1097 (9th Cir.1983), as well as *Montana Livestock PCA v. Federal Intermediate Credit Bank,* CV 75–27–H (D.Mont. Oct. 11, 1977), in support of this argument.

The cases cited by PCA do not support its position. In the *Montana Livestock* case, a suit brought by a production credit association challenging a regulation enacted by the Farm Credit Administration, this court held that the FCA was an arm of the sovereign and immune from suit. *Id.,* slip op. at 4–5. With respect to the Federal

Intermediate Credit Bank, the court recognized that it was subject to ordinary lawsuits, but held that it was shielded by the FCA's immunity since the suit was a direct challenge to a federal policy. *Id.* at 6.

The Ninth Circuit in *Sparkman* granted PCAs immunity from punitive damages only, reaffirming that "the 'sue and be sued' clause in the enabling legislation for production credit associations waives sovereign immunity from ordinary lawsuits." *Sparkman,* 703 F.2d at 1101. *See* 12 U.S.C. § 2122(4).

This court has held that the corporate entities comprising the Farm Credit System are "liable in tort to the same extent as any private entity." *Brekke v. Volcker,* 652 F.Supp. 651, 653 (D.Mont.1987); *Sterrett v. Milk River Production Credit Association,* 647 F.Supp. 299, 303 (D.Mont.1986). Consequently, PCA's immunity argument must fail.[3]

### Federal Tort Claims Act

PCA claims that the Federal Tort Claims Act (FTCA) provides the exclusive remedy for Stiles' allegations sounding in tort, and that Stiles have not exhausted their administrative remedies. Further, the PCA asserts that the statutory exclusions from the FTCA bar the claims asserted by Stiles herein, because they are based on theories of negligence in exercising discretionary functions, fraud, deceit, misrepresentation, or interference with contract.

For the reasons stated above, and in accord with the *Brekke* and *Sterrett* cases, the court rejects PCA's argument, and holds that the FTCA is inapplicable to Stiles' cross-claims.

### Issues Regarding Class B Stock

1. PCA asserts that Stiles cannot claim they have been defrauded, because the rights and liabilities of an owner of Class B stock are specifically set forth in the federal statutes. PCA has a "first lien" on the stock and is permitted to retire stock if the borrower is in default. Likewise, if the PCA has impaired capital, it may apply its

---

**3.** The court has reviewed the authorities cited by PCA at hearing and in its post-hearing brief, and finds them either inapposite or unpersuasive. In the interests of uniformity, and consistent with Montana law, the court adheres to the decisions of the courts of this District.

earnings toward restoration of such impairment. Thus, PCA argues, because the statutory scheme is comprehensive, the borrowers are charged with knowledge of it and cannot complain of fraud in being required to purchase the B stock or in being refused redemption.

■ 2. PCA additionally contends that Stiles cannot recover the Class B stock because it has been frozen in accordance with federal law.

Count Six of the Stiles' cross-claim alleges that the actions of PCA, in compromising loans to other borrowers, have diminished the value of Stiles' stock, to their damage.

Ordinarily, a shareholder may not bring a direct action for recovery of diminished stock value. *Lewis v. Chiles*, 719 F.2d 1044, 1049 (9th Cir.1983). Applying Montana law, the Ninth Circuit recently held that "[a] direct action can be brought either when there is a special duty, between the wrongdoer and the shareholder, or when the shareholder suffers injury separate and distinct from that suffered by other shareholders." *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir.1987). A shareholder can enforce a corporate right in a derivative action if certain conditions are met. *Id.* at 613; Mont.R.Civ.P. 23.1.

Stiles clearly do not seek to bring their cross-claim as a derivative action; therefore, the court inquires whether they can bring a direct action. The court finds that they cannot. As in *Sax*, Stiles have

> not identified [as shareholders] a fiduciary duty owed to [them] that is separate and distinct from that owed to other shareholders and that would allow [them] to maintain a direct action. The injury [they] allege[ ] affected the "whole body of [PCA] stock" and is, therefore, an injury to the corporation.

*Id.*, 809 F.2d at 614. *See also*, 4 D. Dowling, Mont.Code Annotated (Annotations) 66–67 (1986) ("Redress in the form of a separate suit by each individual shareholder whenever the value of his shares is impaired by a wrong to the corporation would result in unnecessary multiplicity of actions."). For the reasons stated in *Sax*,

the court concludes that Count Six of the Stiles' cross-claim must be DISMISSED.

*Fiduciary Duty*

■ PCA claims it has no duty to borrowers to either inform or advise them. It asserts that a lender owes no fiduciary duty to a borrower absent a showing of special circumstances indicating the existence of a confidential relationship between the two.

Following *Brekke v. Volcker*, 652 F.Supp. at 653, this court applies the rule that the PCA is liable in tort under Montana Law to the same extent as any private entity. The Montana Supreme Court has extended the implied covenant of good faith and fair dealing to relationships between banking institutions and their customers. *Noonan v. First Bank Butte*, —— Mont. ——, 740 P.2d 631 (1987); *Tribby v. Northwestern Bank of Great Falls*, —— Mont. ——, 704 P.2d 409, 419 (1985); *First National Bank of Libby v. Twombly*, 213 Mont. 66, 689 P.2d 1226 (1984). The court also has permitted a claim for negligence against a lending institution, if "the allegation of negligence is established in the pleadings and if the proof establishes a claim for the elements of negligence, including unreasonable conduct on the part of the bank." *Noonan*, 740 P.2d at 636.

Finally, the court has recognized the existence of a fiduciary duty between a bank and its customers under certain circumstances. *Deist v. Wachholz*, 208 Mont. 207, 678 P.2d 188 (1984). There, quoting *Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash.App. 456, 656 P.2d 1089, 1092 (1983), the court held that special circumstances may bring a relationship between bank and customer within a fiduciary realm. "The existence of a fiduciary duty to a loan customer depends upon satisfactory proof of a special relationship." *Deist*, 678 P.2d at 193.

Applying Montana law, as interpreted by the courts of this District, the court finds that the Stiles' cross-claims predicated on PCA's alleged tortious conduct must survive the motion to dismiss.

*Discretion to Compromise*

PCA claims that the receiver of a liquidating PCA has discretion to compromise loans and claims, and that Stiles cannot interfere with or compel the exercise of such discretion.

Stiles do not deny the existence of such discretion, but argue that the receiver owes a duty of good faith and fair dealing to PCA members when exercising that discretion. Stiles urge that this claim be considered on its merits.

For the reasons stated above, the court rejects PCA's argument and finds that dismissal is not warranted on this ground.

*Time Barred*

■ PCA asserts that Stiles' cross-claims are time barred. It claims that in 1985, when the decision was made for liquidation, notices were sent to all creditors that claims must be filed within a designated time, and that, having failed to so file, Stiles' claims are barred.

In *Jacobson v. Western Montana PCA*, 643 F.Supp. 391, 393 (D.Mont.1986), this court held that the liquidation of the PCA did not abate existing lawsuits. The court additionally noted:

> I cannot believe that the Farm Credit Administration intended that its action of dissolution should in itself abolish creditors' rights. The absence of any provision for review of a disallowed claim suggests to me that the Farm Credit Administration intended that the normal channels for the resolution of disputes remain open. Section 611.1161(h) [12 C.F.R.] which authorizes the receiver to participate in suits indicates that the authors of the regulations realized that the receiver would be faced with lawsuits.

*Id.* The rationale of *Jacobson* applies equally to suits commenced after the liquidation has begun. Additionally, the Plan of Liquidation, addressing filing and priority of claims, does not mention tort claims such as those asserted by Stiles. Accordingly, the court concludes that the Stiles' claims are not time barred.

*Conclusion*

The claims between Stiles and the PCA are only at their inception. With the exception of count six, and interpreting the cross-claims in the light most favorable to the Stiles, the court cannot conclude that the Stiles can prove no set of facts in support of their claim which would entitle them to relief, and thus the claims must survive the motion to dismiss. Accordingly,

IT IS HEREBY ORDERED:

1. All claims between the Western Montana PCA and defendants Ted S. Stiles, Jr., and Cheryl L. Stiles are STAYED pending further order of the court. The parties shall keep the court apprised of developments in the bankruptcy proceedings which may bear upon the continuance of the stay.

2. The Western Montana Production Credit Association's motion to dismiss the cross-claim of Theodore S. Stiles and Janice L. Stiles is GRANTED as to count six of said cross-claim and DENIED as to all other counts.

The clerk is directed forthwith to notify counsel of entry of this order.