333 Conn. 731 NOVEMBER, 2019 731

U.S. Bank National Assn. *v.* Crawford

## U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE *v.* JACQUELYN N. CRAWFORD ET AL. (SC 19903)

Palmer, McDonald, Robinson, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

The plaintiff in error, E, who had been appointed by the trial court as the
committee to conduct a foreclosure sale in the underlying foreclosure
action brought by the defendant in error bank, U Co., against the defen-
dant in error property owner, C, filed a writ of error, claiming, inter
alia, that the trial court improperly denied his motion to recover fees
and expenses from U Co. U Co. had sought to foreclose a mortgage
on certain of C's real property. The trial court rendered judgment of
foreclosure by sale, and U Co. was the successful bidder. Before the
sale could be completed, C filed a bankruptcy petition under chapter
13 of the United States Bankruptcy Code in the United States Bankruptcy
Court, which automatically stayed the foreclosure proceedings pursuant
to the automatic stay provision (11 U.S.C. § 362 [a] [2012]) of the code.
Thereafter, pursuant to statute (§ 49-25), E filed a motion seeking to
recover from U Co. the fees and expenses that he had incurred in
preparing for the sale. The trial court denied E's motion for fees and
expenses on the ground that, pursuant to the Appellate Court's decision
in *Equity One, Inc.* v. *Shivers* (150 Conn. App. 745), the motion automati-
cally was stayed by 11 U.S.C. § 362 (a) and the court was barred from
acting on the motion during the duration of the stay. In connection with
his writ of error, E claimed, inter alia, that this court should overrule
*Shivers* because state courts lack jurisdiction to extend the automatic
stay provision to motions for fees and expenses filed by committees
for sale seeking expenses from nondebtor plaintiffs in foreclosure
actions. *Held*:

1. This court could review E's writ of error because, although the trial court's
order denying E's motion for fees and expenses was an interlocutory
order, it constituted an appealable final judgment under the second
prong of the test for determining the appealability of interlocutory orders
set forth in *State* v. *Curcio* (191 Conn. 27), as the denial of the motion
so substantially resolved the rights of the parties that further proceedings
could not affect them: E, who was not a party to the underlying foreclo-

* The listing of justices reflects their seniority status on this court as of
the date of oral argument.

This case was originally argued before a panel of this court consisting of
Justices Palmer, McDonald, Robinson, D'Auria, Mullins and Kahn. There-
after, Justice Ecker was added to the panel and has read the briefs and
appendices, and listened to a recording of the oral argument prior to partici-
pating in this decision.

U.S. Bank National Assn. *v.* Crawford

sure action, had an undisputed right to recover the fees and expenses that he had incurred in preparing for the sale immediately upon the filing of a proper and timely motion, that right was separate from and collateral to the rights being asserted in the foreclosure action, and there was no possibility that his claim could be raised on direct appeal from the trial court's judgment in the foreclosure action without first being rendered moot; moreover, the claim E asserted in his writ of error, which already has arisen on numerous occasions in the courts of this state, involved a matter of public importance, as committees for sale, whice are appointed by and act as representatives of the court, may be reluctant to accept appointment if they are unable to promptly recover the fees and expenses they incur in that capacity, and allowing review of the trial court's ruling in the present case would entirely dispose of the issue presented, would not open the floodgates to additional writs of error raising the same issue, and would avoid the bizarre result of allowing *Shivers*, which is inconsistent with the majority of federal bankruptcy decisions, to continue to bind this state's trial courts.

(*Three justices dissenting in one opinion*)

2. Although E's writ of error was rendered moot because the automatic stay terminated when, during the pendency of the writ of error, C's bankruptcy petition was dismissed, E's claim was reviewable under the capable of repetition, yet evading review exception to the mootness doctrine; because of the limited duration of chapter 13 bankruptcy proceedings, which, on average in the federal bankruptcy court in Connecticut, span approximately ten months, there existed a strong likelihood that the majority of cases challenging a denial of a motion for committee fees and expenses would be moot before appellate litigation could be completed, the issue presented by E's writ of error, which already has arisen on numerous occasions in the courts of this state, was likely to recur, and resolution of that issue was of public importance.

3. This court having determined that a state court lacks subject matter jurisdiction to extend the automatic bankruptcy stay to proceedings against nondebtors, it overruled the Appellate Court's decision in *Shivers*, and, because the trial court relied exclusively on *Shivers* in denying E's motion for fees and expenses, this court granted E's writ of error and remanded the case to the trial court with direction to vacate the order denying E's motion and to consider the motion on the merits; Connecticut and federal case law indicated that the stay provision set forth in 11 U.S.C. § 362 (a), which operates to benefit the debtor and bankruptcy trustee only, does not apply automatically to claims against nondebtors, and that, although state courts have jurisdiction to interpret the provisions of the bankruptcy code and orders of the bankruptcy court to determine whether, under their plain terms, the automatic stay provision applies in a state court proceeding, the bankruptcy court has exclusive jurisdiction to modify a stay by extending it to proceedings to which it does not automatically apply or by barring it in proceedings

333 Conn. 731 NOVEMBER, 2019 733

U.S. Bank National Assn. *v.* Crawford

to which it does automatically apply, and, therefore, a state court lacks jurisdiction to extend the automatic stay provision to the motion of a committee for sale to recover fees and expenses from a nondebtor.

Submitted on briefs April 2, 2018—officially released November 26, 2019

*Procedural History*

Writ of error from the decision of the Superior Court in the judicial district of Hartford, *Robaina, J.*, denying the motion to award interim foreclosure committee fees and expenses filed by the plaintiff in error. *Writ of error granted*; *remanded with direction.*

*C. Donald Neville* and *Gregory W. Piecuch* filed a brief for the plaintiff in error (Douglas M. Evans).

*Robert A. White, Proloy K. Das, Sarah Gruber, Irve Goldman, Thomas J. Sansone* and *Charles A. Maglieri* filed a brief for the Connecticut Bar Association as amicus curiae.

*Opinion*

ROBINSON, J. The primary issue raised by this writ of error is whether the automatic stay provision of the federal bankruptcy code, 11 U.S.C. § 362 (a) (1),[1] precludes a committee for sale from recovering fees and expenses from a plaintiff in a foreclosure action that has been stayed because the defendant has filed for bankruptcy. The plaintiff, the U.S. Bank National Association, brought the underlying foreclosure action against the defendant Jacquelyn N. Crawford.[2] The trial

---

[1] Title 11 of the 2012 edition of the United States Code, § 362 (a), provides in relevant part that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . ."

[2] We note that these parties in the underlying foreclosure action are defendants in error in the present proceeding. For the sake of simplicity, we refer to U.S. Bank National Association as the bank and to Crawford by name. We also note that, although the city of Hartford, the Department of Social Services, and the United States Secretary of Housing and Urban Development were also named as defendants in the underlying foreclosure action, they are not involved in the present proceeding.

U.S. Bank National Assn. *v.* Crawford

court ultimately ordered a foreclosure by sale and appointed the plaintiff in error, Douglas M. Evans, as the committee for sale. Before the sale could be completed, however, Crawford declared bankruptcy, and the foreclosure action was stayed pursuant to 11 U.S.C. § 362 (a) (1). Thereafter, the plaintiff in error filed a motion pursuant to General Statutes § 49-25,[3] seeking to recover, from the bank, the fees and expenses that he had incurred in preparing for the sale. Relying on an Appellate Court decision; see *Equity One, Inc.* v. *Shivers*, 150 Conn. App. 745, 755, 93 A.3d 1167 (2014) (when defendant in foreclosure action has declared bankruptcy, automatic stay provision applies to motions for fees and expenses by committee for sale against nondebtor plaintiff); the trial court concluded that the plaintiff in error's motion for fees and expenses was stayed and issued an order denying the motion on that ground. This writ of error was then filed pursuant to General Statutes § 51-199 (b) (10)[4] and Practice Book § 72-1.[5] Specifically, the plaintiff in error contends that this court should overrule *Shivers* because the Appellate Court lacked subject matter jurisdiction to extend the automatic stay provision to motions to recover fees and expenses from nondebtor plaintiffs in foreclosure actions. In the alternative, the plaintiff in error contends that we should overrule *Shivers* on the merits because it is in conflict with the decisions of federal bankruptcy courts addressing this issue. We conclude that state courts lack jurisdiction to extend the automatic stay

[3] General Statutes § 49-25 provides in relevant part: "[I]f for any reason the sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and be taxed with the costs of the case. . . ."

[4] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (10) writs of error . . . ."

[5] Practice Book § 72-1 provides in relevant part: "(a) Writs of error for errors in matters of law only may be brought from a final judgment of the Superior Court to the Supreme Court in the following cases: (1) a decision binding on an aggrieved nonparty . . . ."

U.S. Bank National Assn. *v.* Crawford

provision to proceedings against nondebtors and that *Shivers* must be overruled on that ground. Accordingly, we grant the writ of error and remand the case to the trial court with direction to vacate the order denying the plaintiff in error's motion for fees and expenses and to entertain the motion.

The record reveals the following undisputed facts and procedural history. Crawford executed a promissory note in favor of the bank that was secured by a mortgage on property located at 36-38 Baltic Street in the city of Hartford. After Crawford defaulted on the note, the bank commenced a foreclosure action against her. The trial court ultimately rendered a judgment of foreclosure by sale and appointed the plaintiff in error as the committee for sale. The sale was scheduled for February 4, 2017, and the bank was the successful bidder. Shortly thereafter, the plaintiff in error filed his report, in which he listed expenses totaling $2419.29. He also submitted an affidavit in which he averred that the legal fees incurred in connection with the sale were expected to be $3420.

Before the sale could be completed, however, Crawford filed for bankruptcy pursuant to chapter 13 of the United States Bankruptcy Code. Because the automatic stay provision applied to the foreclosure action, the sale of the property could not be completed. Accordingly, the plaintiff in error filed a motion to recover his fees and expenses from the bank pursuant to § 49-25. See footnote 3 of this opinion. The plaintiff in error contended in the motion that the trial court should not follow the Appellate Court's decision in *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 755, holding that the bankruptcy stay provision applies to such motions because it was in conflict with the decisions of several federal courts. The trial court concluded that it was bound by *Shivers* and denied the plaintiff in error's motion solely on that ground.

U.S. Bank National Assn. *v.* Crawford

In the present case, the plaintiff in error contends that this court should overrule *Shivers* on two alternative grounds. First, he contends that the Appellate Court in *Shivers* lacked jurisdiction to extend the automatic stay provision to motions by committees for sale to recover fees and expenses from nondebtors. Second, the plaintiff in error contends that, if we conclude that the Appellate Court had such jurisdiction in *Shivers*, that court incorrectly concluded that the automatic stay provision should be extended to such motions. After the writ of error was filed, this court, sua sponte, ordered the parties to address in their appellate briefs the following two issues: (1) whether the plaintiff in error is aggrieved by a final judgment of the Superior Court such that he has standing to bring the writ of error, and (2) whether the controversy will be rendered moot if the bankruptcy stay terminates during the pendency of the writ of error. We note that the automatic stay terminated on July 27, 2017. The bank has filed no appellate brief.[6]

We conclude that the plaintiff in error has standing to bring the writ of error. We further conclude that, although his claim is moot, it is nonetheless reviewable under the capable of repetition, yet evading review exception to the mootness doctrine. Addressing the merits of the plaintiff in error's claim, we conclude that state courts lack jurisdiction to extend the automatic stay provision to motions by committees for sale to recover fees and expenses from nondebtor foreclosure plaintiffs and, therefore, that *Shivers* must be overruled.

---

[6] This court also, sua sponte, invited the Litigation Section and the Commercial Law and Bankruptcy Section of the Connecticut Bar Association to file an amicus curiae brief addressing the following question: "Should this court overrule *Equity One, Inc.* v. *Shivers*, [supra, 150 Conn. App. 745], insofar as that case required the trial court to deny the committee's motion for an interim award of fees and expenses during the automatic bankruptcy stay?" The Commercial Law and Bankruptcy Section, acting on behalf of the Connecticut Bar Association as a whole, accepted our invitation and submitted an amicus curiae brief in support of the plaintiff in error's position that this court should overrule *Shivers*. We thank the Commercial Law and Bankruptcy Section for its comprehensive brief.

U.S. Bank National Assn. *v.* Crawford

I

Because it implicates this court's subject matter juris-diction, we first address the issue of whether the plaintiff in error is aggrieved by a final judgment and, therefore, has standing to bring this writ of error. See *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("[b]ecause our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim"). The plaintiff in error contends that, because his motion seeking payment by the bank of his fees and expenses was essentially a separate third-party claim, and because it was denied in full, the order denying the motion is not interlocutory in nature but, rather, constitutes an appealable final judgment. We disagree. Although the trial court denied the motion, it is clear that the denial was without prejudice to the plain-tiff in error's right to renew the motion after the auto-matic stay terminated. See *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 755 and n.6 (although order grant-ing committee for sale's motion for fees was void because automatic stay was in place when order was issued, because stay had since terminated, parties could "revisit the question of payment for committee fees on remand"). Accordingly, we conclude that that order is interlocutory.

The plaintiff in error also claims, however, that, if the trial court's order denying his motion for fees and expenses is interlocutory, it is reviewable under *State* v. *Curcio*, supra, 191 Conn. 31. In that case, we stated that, "[i]n both criminal and civil cases . . . we have determined certain interlocutory orders and rulings of the Superior Court to be final judgments for purposes of appeal. An otherwise interlocutory order is appeal-able in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id.

U.S. Bank National Assn. *v.* Crawford

We acknowledge at the outset of our analysis that this court's *Curcio* jurisprudence is hardly a model of clarity or consistency. We further acknowledge that, as a result of this doctrinal confusion, it is possible to identify both cases that provide support for the conclusion that the trial court's denial of the plaintiff in error's motion for fees and expenses is immediately reviewable under *Curcio* and cases that arguably undermine that conclusion. For the following reasons, however, we ultimately are persuaded that the trial court's denial of the motion for fees and expenses is immediately reviewable under the second prong of *Curcio*.

First, immediate review of the trial court's ruling will in no way offend the primary public policy considerations that underlie the final judgment rule. We previously have recognized that the rule's primary policy rationale is "to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." (Internal quotation marks omitted.) *Mazurek* v. *Great American Ins. Co.*, 284 Conn. 16, 33, 930 A.2d 682 (2007). In the present case, reviewing the denial of the motion for fees and expenses will have no adverse effect on the speedy and orderly disposition of the underlying foreclosure action because the plaintiff in error is not a party to that action and the issue that he raises in this writ of error implicates a right that is separable from, and collateral to, the rights being asserted in the foreclosure action. See *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 256, 520 A.2d 605 (1987) (observing with approval that, under federal law, review of interlocutory orders is available for claims involving a "right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated" [internal quotation marks omitted]); see also *Niro* v. *Niro*, 314 Conn. 62, 71–72, 100 A.3d 801 (2014) (distin-

U.S. Bank National Assn. *v.* Crawford

guishing situation in which order was reviewable under *Curcio* because plaintiff in error was not involved in, and challenged order was not intertwined with, underlying litigation, from situation in which *Curcio* did not apply because plaintiff in error was party to, and challenged order was intertwined with, underlying litigation).

Moreover, the policy of discouraging piecemeal appeals carries little weight under the circumstances present in this case, in which there is *no possibility* that the plaintiff in error's claim could be raised in a direct appeal from the judgment in the foreclosure action. See *Lougee* v. *Grinnell*, 216 Conn. 483, 487, 582 A.2d 456 (1990) (interlocutory ruling was reviewable when underlying proceeding would not result in later judgment from which appellant could appeal). Rather, if we decline to review the trial court's denial of the plaintiff in error's motion for fees and expenses under *Curcio*, the issue of whether the Appellate Court's decision in *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 755, holding that the bankruptcy stay provision applies to such motions—which was the sole basis for the trial court's ruling—may *forever* evade appellate review. This is so because, if a committee for sale is required to wait until the stay is lifted and the motion for fees and expenses is granted to challenge the initial denial of the motion pursuant to *Shivers*, the claim will be moot, and the committee for sale will no longer be aggrieved. Accordingly, this court would lack jurisdiction to entertain the plaintiff in error's claim. See, e.g., *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 91, 971 A.2d 1 (2009) ("[i]f a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause" [internal quotation marks omitted]); *Bornemann* v. *Connecticut Siting Council*, 287 Conn. 177, 181, 947 A.2d 302 (2008) ("it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can

follow'' [internal quotation marks omitted]); see also
Practice Book § 72-1 (a) (''[w]rits of error for errors in
matters of law . . . may be brought [only] from a final
judgment of the Superior Court to the Supreme Court
in the following cases . . . a decision binding on an
*aggrieved* nonparty'' [emphasis added]).

The dissent suggests, however, that the initial rul-
ing denying the motion for fees and expenses could
be reviewed after the stay is lifted and the motion is
granted under the capable of repetition, yet evading
review exception to the mootness doctrine. We have
some doubt as to whether that is the case in light of
this court's suggestion in *In re Emma F.*, 315 Conn.
414, 428 n.12, 107 A.3d 947 (2015), that cases in which
an appellant is no longer *aggrieved* by the judgment of
the Superior Court because the judgment is no longer
in effect—as distinct from cases in which the judgment
is technically still in effect but intervening factual cir-
cumstances have rendered the appeal *moot* by depriving
the judgment of any practical significance—are not sub-
ject to the ''capable of repetition, yet evading review''
exception to the mootness doctrine. See id., 428–29 n.12
(''[G]iven the trial court's vacatur of the judgment at
issue . . . query whether the [appellant] is still an
'aggrieved' party, as is required by General Statutes
§ 52-263. If we were to hear this appeal on its merits,
there does not appear anything left for us to reverse
should the [appellant] prevail—even pyrrhically under
the capable of repetition, yet evading review excep-
tion—insofar as the [appellant] has now received all
of the relief it would have obtained by a successful
appeal.''). Even if we were to assume that the exception
would apply, however, we still can perceive no reason
why we should decline to apply an exception to the
rule requiring a final judgment for appellate jurisdiction
now merely because, at some later time, when the right
that the plaintiff in error seeks to vindicate—namely,
the right to recover his fees and expenses from the

U.S. Bank National Assn. *v.* Crawford

bank *while the automatic stay provision is in effect*—will be forever lost, we might be able to apply an exception to the mootness doctrine, which also implicates our appellate jurisdiction.[7]

Second, and relatedly, the trial court's ruling threatens to abrogate a right that the plaintiff in error *now* holds. See *State* v. *Longo*, 192 Conn. 85, 91, 469 A.2d 1220 (1984) (party seeking review of interlocutory order "must show that that decision threatens to abrogate a right that he or she *then* holds" [emphasis in original]).[8]

[7] The dissent also suggests that the plaintiff in error could have filed a declaratory judgment action in state court to obtain the relief that he seeks. As the dissent recognizes, however, the plaintiff in error could not have brought such an action after the trial court ruled on his motion for fees and expenses in the present case because a party may not bring an action in the Superior Court effectively asking that court to review a ruling of another trial court in another case. See *Valvo* v. *Freedom of Information Commission*, 294 Conn. 534, 543–44, 985 A.2d 1052 (2010) ("[o]ur jurisprudence concerning the trial court's authority to overturn or to modify a ruling in a particular case assumes, as a proposition so basic that it requires no citation of authority, that any such action will be taken only by the trial court with continuing jurisdiction over the case, and that the only court with continuing jurisdiction is the court that originally rendered the ruling"). With respect to the dissent's contention that the plaintiff in error could have brought such an action *before* filing his motion for fees and expenses, we are aware of no authority for the proposition that a court may issue an advisory, declaratory ruling on an issue that will arise in ongoing litigation in another case. In our view, the question of whether a committee for sale is entitled to immediate payment properly can be entertained only by the trial court in which such payment can be sought, which is the court in which the foreclosure action is pending. In any event, we fail to see how requiring the plaintiff in error to jump through these procedural hoops would be preferable as a matter of judicial policy to entertaining the writ of error in the present case.

[8] Again, we acknowledge that it is difficult to discern a clear and consistent pattern in this court's application of this principle. Compare *State* v. *Longo*, supra, 192 Conn. 91 ("[W]here a defendant plausibly demonstrates that a trial court order threatens his or her double jeopardy right not to be tried twice for the same offense, the appeal is within our jurisdiction. *State* v. *Moeller*, 178 Conn. 67, 420 A.2d 1153, cert. denied, 444 U.S. 950, 100 S. Ct. 423, 62 L. Ed. 2d 320 [1979]. That order is appealable because, at the time of the appeal, the defendant already has an unqualified right to be free from double jeopardy."), with *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 257 ("It is true that a remand for a new trial resulting from an erroneous

U.S. Bank National Assn. *v.* Crawford

There is no dispute in the present case that a committee for sale ordinarily is entitled to recover fees and expenses immediately upon filing a proper and timely motion for fees. The sole reason that the plaintiff in error's motion for fees and expenses was denied was that the trial court had ruled that, under *Shivers*, the motion was subject to the automatic stay provision. Thus, if *Shivers* was wrongly decided, the plaintiff in error is *now* being unlawfully deprived of an existing right to reimbursement.

order to disclose information protected by the [attorney-client] privilege cannot wholly undo the consequences of its violation . . . . Vindication at the appellate level can seldom regain all that has been lost by an erroneous determination of a cause in the trial court.'' [Internal quotation marks omitted.]); see also *State* v. *Longo*, supra, 92–93 (ruling denying youthful offender status is not reviewable under *Curcio* even though denial may deprive defendant irretrievably of right to privacy conferred by youthful offender statute); *State* v. *Longo*, supra, 98 (*Healy, J.*, dissenting) (court's ''focal concern for irreparable harm in the final judgment rule is indeed lessened by today's ruling''). It is hard to understand why the constitutional right to be free from double jeopardy is any more ''unqualified'' at the time of an interlocutory appeal than the common-law right to invoke the attorney-client privilege against disclosure (assuming that the communications at issue are, in fact, privileged) or the statutory right to youthful offender status (assuming that the defendant does, in fact, satisfy the criteria for such status). We recognize that, in *Longo*, the court emphasized that, unlike the right to double jeopardy protection, defendants were, at that time, required to apply for youthful offender status pursuant to General Statutes (Rev. to 1983) § 54-76c, and the granting of the application was within the discretion of the trial court. See *State* v. *Longo*, supra, 92. Discretion can be abused, however, and, when it is, an *existing right* is violated. Cf. *Giaimo* v. *New Haven*, 257 Conn. 481, 509, 778 A.2d 33 (2001) (applicant for statutory benefit ''has a protected property interest in the benefit when, under the governing statute, the decision-making body would have no discretion to deny the application if the applicant could establish at a hearing that it met the statutory criteria''). It would appear, therefore, that the real driving force in these cases is this court's judgment regarding the *importance* of the right at issue, not the ontological status of the right at the time the appeal is filed. See, e.g., *Melia* v. *Hartford Fire Ins. Co.*, supra, 256 (review of interlocutory orders is available for claims involving right ''too important to be denied review'' [internal quotation marks omitted]). In any event, in the present case, *all* of the relevant considerations weigh in favor of immediate review, including the public importance of the right that the plaintiff in error is attempting to vindicate.

U.S. Bank National Assn. *v.* Crawford

Third, the plaintiff in error's claim involves a question of some public importance. See, e.g., *Abreu* v. *Leone*, 291 Conn. 332, 347–48, 968 A.2d 385 (2009) (interlocutory discovery order is reviewable if case involves counterbalancing public policy factor that weighs against policies underlying final judgment rule); *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 256 (review of interlocutory orders is available for claims involving right "too important to be denied review" [internal quotation marks omitted]). "A committee [for] sale functions as an arm of the court in a judicial sale. The committee conducting a sale is an agent or representative of the court." (Internal quotation marks omitted.) *Citicorp Mortgage*, *Inc.* v. *Burgos*, 227 Conn. 116, 123, 629 A.2d 410 (1993). Under the Appellate Court's decision in *Shivers*, attorneys may be more reluctant to serve the courts in this capacity when, through no fault of their own, they are rendered unable to recover their fees and expenses promptly in foreclosure actions in which a defendant has declared bankruptcy, and then must either wait for an indefinite period of time until the stay terminates or seek a judgment from the bankruptcy court declaring that the stay does not bar such recovery, thereby incurring additional fees and expenses for which the committee ultimately may not be compensated.[9] We further note that this issue has arisen with

_____

[9] Indeed, this is precisely what happened in *CT Tax Liens 2*, *LLC* v. *Tasillo*, Superior Court, judicial district of Hartford, Docket No. CV-12-6035369-S (October 1, 2014). After the trial court in that case denied the committee for sale's motion for fees and expenses on the ground that the motion was subject to the automatic stay, the committee filed a motion in the bankruptcy court seeking a declaratory judgment that the automatic stay did not apply. See *In re Tasillo*, United States Bankruptcy Court, Docket No. 14-21683 (ASD) (D. Conn. January 6, 2015). The bankruptcy court agreed with the committee and rendered a judgment declaring that the automatic stay did not bar the committee from seeking fees and expenses from the nondebtor plaintiff. Id. The committee then returned to the Superior Court and renewed its motion for fees and expenses, seeking an additional $1000 in attorney's fees and a filing fee of $176 in connection with the bankruptcy court proceeding. See *CT Tax Liens 2*, *LLC* v. *Tasillo*, Superior Court, judicial district of Hartford, Docket No. CV-12-6035369-S (January 29, 2015).

U.S. Bank National Assn. *v.* Crawford

some frequency in this state.[10] Accordingly, it is important to know whether the decision in *Shivers* was correct.

The dissent points out that, in *Melia*, this court stated that it "has no discretionary jurisdiction comparable to that given the federal courts by [28 U.S.C.] § 1292 (b) to entertain appeals from interlocutory orders, except as provided in General Statutes § 52-265a." *Melia* v. *Hartford Fire Ins. Co.*, supra, 202 Conn. 256. Although it is true that this court has no *statutory* authority other than § 52-265a to entertain interlocutory appeals, it does have the authority to treat appeals that are otherwise interlocutory in character as appeals from final judgments if they satisfy *Curcio*, and our reading of *Melia* satisfies us that we consider federal court decisions to be persuasive when we are considering the scope of that authority. Indeed, in *Melia*, we dismissed the defendant's interlocutory appeal pursuant to *Curcio* for the same reason the Chief Justice previously had denied

The trial court granted the motion in part but denied the fees and expenses associated with the bankruptcy court proceeding. Id.

We note that the decision of a federal bankruptcy court in a particular case is not binding on our trial courts in other cases. Thus, as the dissent recognizes, if we do not review the plaintiff in error's claim, our trial courts will continue to be bound by the Appellate Court's decision in *Shivers*, despite our shared "concern about the viability of *Shivers* going forward" in light of *Tasillo*.

[10] See, e.g., *In re Hooker*, United States Bankruptcy Court, Docket No. 18-20504 (JJT) (D. Conn. June 27, 2018); *In re Tasillo*, United States Bankruptcy Court, Docket No. 14-21683 (ASD) (D. Conn. January 6, 2015); *In re VMC Real Estate, LLC*, United States Bankruptcy Court, Docket No. 11-20452 (ASD) (D. Conn. March 9, 2012); *In re Rubenstein*, 105 B.R. 198, 201–204 (Bankr. D. Conn. 1989); *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 749–56; *HSBC Bank USA, N.A.* v. *Schmidt*, Superior Court, judicial district of New Britain, Docket No. CV-14-6024891-S (February 25, 2016); *United States Bank Assn.* v. *Barber*, Superior Court, judicial district of New Haven, Docket No. CV-13-6037544-S (May 20, 2015); *Citimortgage, Inc.* v. *Sheehan*, Superior Court, judicial district of New Haven, Docket No. CV-08-5020865-S (February 27, 2015); *CT Tax Liens 2, LLC* v. *Tasillo*, Superior Court, judicial district of Hartford, Docket No. CV-12-6035369-S (October 1, 2014); *Citimortgage, Inc.* v. *Hilton*, Superior Court, judicial district of Ansonia-Milford, Docket No. CV-14-6015156-S (August 25, 2014).

U.S. Bank National Assn. *v.* Crawford

the defendant's petition pursuant to § 52-265a, namely, that there were ''no significant ramifications affecting the public interest or entailing injustice from delay that cannot be substantially redressed by appellate review of the final judgment after completion of the trial.'' Id., 257. It would appear, therefore, that, if the interlocutory appeal in *Melia had* involved a matter of significant public interest or the denial of review had entailed injustice that could not be redressed by belated appellate review of the final judgment, we would have taken those considerations into account under *Curcio*. To the extent that *Melia* suggests that § 52-265a provides the *exclusive* mechanism for bringing an interlocutory *appeal* that involves a substantial public interest, we note that the plaintiff in error in the present case could not have sought recourse pursuant to § 52-265a because he is not a party to the action and, therefore, could not file an appeal. See *State* v. *Gault*, 304 Conn. 330, 348, 39 A.3d 1105 (2012) (''statutory authorization to bring [an appeal pursuant to § 52-265a] is extended only to 'any party to an action' ''). We conclude that, when a nonparty seeks interlocutory review of a decision pursuant to *Curcio*, and the matter satisfies the substantial public interest standard of § 52-265a and also involves a right that is separable from and collateral to the rights being asserted in the underlying action, *Curcio* is capacious enough for us to entertain the writ of error.

Fourth, unlike, for example, a broad rule that a particular *class* of interlocutory discovery rulings, such as those involving privileged communications, are immediately appealable, which would allow a myriad of appeals from many types of rulings, if we review the ruling at issue here, our decision will dispose of that issue once and for all and will not open the floodgates to additional writs of error raising the same issue. Cf. *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 655–56 n.6, 954 A.2d 816 (2008) (declining to treat denial of motion for summary judgment as final appealable

U.S. Bank National Assn. *v.* Crawford

judgment because doing so "would open the floodgates to appeals brought from interlocutory orders").

Finally, we think it is significant that our appellate court system *created for itself* the predicament that it now finds itself in. It would be bizarre to conclude that, once the Appellate Court decided in *Shivers* that a committee for sale must await the lifting of the automatic stay provision to obtain payment for its fees and expenses, our trial courts became *forever* bound by that decision, even though the issue involves the interpretation of the federal bankruptcy code and most of the decisions by bankruptcy courts in this jurisdiction have disagreed with *Shivers;* see *In re Tasillo*, United States Bankruptcy Court, Docket No. 14-21683 (ASD) (D. Conn. January 6, 2015); *In re VMC Real Estate, LLC*, United States Bankruptcy Court, Docket No. 11-20452 (ASD) (D. Conn. March 9, 2012); *In re Rubenstein*, 105 B.R. 198 (Bankr. D. Conn. 1989); see also *United States Bank Assn.* v. *Barber*, Superior Court, judicial district of New Haven, Docket No. CV-13-6037544-S (May 20, 2015) (noting that "[t]he only certainty is that *Shivers* currently remains binding on trial judges in Connecticut," and expressing "sympath[y] to the plight of the committee, who, through no fault of her own, finds herself temporarily uncompensated for her labor and unreimbursed for her out-of-pocket expenses"); *United States Bank Assn.* v. *Barber*, supra (recognizing that "bankruptcy judges are known as first-rate jurists [and presumably have far greater experience with technical issues of bankruptcy law]" than nonbankruptcy judges); and even though a committee for sale acts on the court's behalf. See, e.g., *Citicorp Mortgage, Inc.* v. *Burgos*, supra, 227 Conn. 123. Contrary to the dissent's contention, our conclusion that the trial court's ruling pursuant to *Shivers* is reviewable does not further "muddy our final judgment jurisprudence" but merely provides a pragmatic solution to a problem of the courts' own creation that would otherwise remain forever unresolved.

U.S. Bank National Assn. *v.* Crawford

We conclude, therefore, that we may review the plaintiff in error's claim under the second prong of *Curcio*, applicable to an order that "so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31.

II

We next consider whether the plaintiff in error's claim is moot because the automatic stay has terminated. We conclude that the claim is moot but is reviewable under the capable of repetition, yet evading review exception to the mootness doctrine.

We begin with a review of the governing legal principles. "Mootness is a question of justiciability that must be determined as a threshold matter because it implicates this court's subject matter jurisdiction. . . . [A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citation omitted; internal quotation marks omitted.) *Wendy V.* v. *Santiago*, 319 Conn. 540, 544–45, 125 A.3d 983 (2015).

In the present case, the automatic stay terminated when Crawford's bankruptcy claim was dismissed on July 27, 2017, during the pendency of this writ of error. Because the automatic stay provision no longer bars the plaintiff in error from recovering his fees and expenses from the bank pursuant to § 49-25, our decision in this case can have no practical effect on his right to recover, and his claim that the automatic stay provision does not apply to motions for fees and expenses is, therefore, moot.[11]

[11] The plaintiff in error has not renewed his motion to recover the fees and expenses that he sought in his original motion for fees and expenses. Accordingly, the trial court's ruling on that motion is still in effect, and the plaintiff in error is still technically aggrieved. See footnote 5 of this opinion.

U.S. Bank National Assn. *v.* Crawford

An otherwise moot question, however, may qualify for appellate review under the capable of repetition, yet evading review exception to the mootness doctrine. See id., 545. To qualify for this exception, "three requirements must be met. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) Id., 545–46.

We explained in part I of this opinion that the issue raised by the plaintiff in error has some public importance and that it already has been raised in numerous cases in this state. Accordingly, it is reasonable to conclude that committees for sale who find themselves in the same position as the plaintiff in error will likely continue to raise the issue. We conclude, therefore, that the second and third prongs of the capable of repetition, yet evading review exception are met.

With respect to the first prong, the plaintiff in error has provided information showing that, in 2016, the median time interval between the filing and the closing of an individual debtor's chapter 13 bankruptcy case in the United States Bankruptcy Court for the District of Connecticut was 248 days. See U.S. Bankruptcy Courts, BAPCPA Table 3 (December 31, 2016), available at http://www.uscourts.gov/sites/default/files /data_tables/bapcpa_3_1231.2016.pdf (last visited November 18, 2019). We note that more recent statis-

tics from the same source indicate that this interval has increased to 303 days. See U.S. Bankruptcy Courts, BAPCPA Table 3 (December 31, 2017), available at http://www.uscourts.gov/sites/default/files/data_tables /bapcpa_3_1231.2017.pdf (last visited November 18, 2019). In *Sweeney* v. *Sweeney*, 271 Conn. 193, 202– 203, 856 A.2d 997 (2004), this court concluded that, when the challenged action was likely to have a duration of twenty-three months, the first prong of the capable of repetition, but evading review exception was satisfied. See id. ("the record in the present case reveals that this dissolution action was litigated vigorously by both parties, resulting in a span of twenty-three months between the commencement of the action and the final judgment of dissolution; such a time frame demonstrates the unlikelihood that appellate resolution regarding a pendente lite order entered during the course of such proceedings could be achieved before the order is superseded"). We conclude, therefore, that the average duration of an individual debtor's chapter 13 bankruptcy proceeding—303 days, or slightly less than ten months—is sufficiently limited to satisfy the first prong of the capable of repetition, yet evading review exception to the mootness doctrine.

Because we conclude that the plaintiff in error's claim satisfies all three requirements of the capable of repetition, yet evading review exception to the mootness doctrine, the claim is reviewable.

III

We turn, therefore, to the plaintiff in error's contention that we should overrule the decision of the Appellate Court in *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 755, holding that the automatic stay provision operates to bar committees for sale from recovering fees and expenses from nondebtor plaintiffs in foreclosure actions that are subject to the stay. As

U.S. Bank National Assn. *v.* Crawford

we indicated, the plaintiff in error contends that *Shivers* should be overruled on two alternative grounds. First, he contends that the Appellate Court in *Shivers* lacked subject matter jurisdiction to extend the automatic stay provision to motions to recover fees and expenses from nondebtor plaintiffs in mortgage foreclosure actions because the bankruptcy court has exclusive jurisdiction to determine the scope of the automatic stay. Second, he contends that, if the Appellate Court had such subject matter jurisdiction, it incorrectly determined that the automatic stay provision applied to such motions. We conclude that state courts lack subject matter jurisdiction to extend the automatic stay provision to proceedings against nondebtors and, therefore, that *Shivers* must be overruled on that ground. Accordingly, we need not consider whether *Shivers* was correct on the merits.

Whether a court has subject matter jurisdiction to entertain a claim is a question of law subject to plenary review. See, e.g., *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 802, 925 A.2d 292 (2007). In making our determination as to whether the courts of this state have subject matter jurisdiction to extend the automatic stay provision to proceedings against nondebtors in the present case, we do not write on a blank slate. The Appellate Court considered this issue in *Metro Bulletins Corp.* v. *Soboleski*, 30 Conn. App. 493, 496–97, 620 A.2d 1314, cert. granted, 225 Conn. 923, 625 A.2d 823 (1993) (appeal withdrawn June 4, 1993), and concluded that any request to extend the automatic stay provision to proceedings against a nondebtor must be made in bankruptcy court.[12] The Appellate Court in *Soboleski* noted that, although the automatic stay provision ordinarily "does not enjoin litigation against nondebtors," there is "limited authority for extending the stay to a nondebtor in special circum-

---

[12] We note that the court in *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 745, did not cite the decision in *Soboleski*.

U.S. Bank National Assn. *v.* Crawford

stances." Id., 496; see also 11 U.S.C. § 105 (a) (2012).[13] The court also noted, however, that "the weight of the case law indicates that a nondebtor, seeking to extend the stay beyond the debtor, must move for the extension in the bankruptcy court."[14] *Metro Bulletins Corp.* v.

---

[13] Title 11 of the 2012 edition of the United States Code, § 105 (a), provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

[14] The Appellate Court followed this proposition with citations to several cases. *Metro Bulletins Corp.* v. *Soboleski*, supra, 30 Conn. App. 497; see *Ingersoll-Rand Financial Corp.* v. *Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir. 1987) (although bankruptcy court may lift stay upon request of party pursuant to 11 U.S.C. § 362 [d], stay was in effect because bankruptcy court had ordered no such relief and no statutory exception to stay provision applied); *Federal Land Bank of Spokane* v. *Stiles*, 700 F. Supp. 1060, 1063 (D. Mont. 1988) ("[a]lthough 11 U.S.C. § 105 [a] has been held to authorize a stay order as to a [codefendant]," no stay was in effect because bankruptcy court had not ordered one); *B & B Associates* v. *Fonner*, 700 F. Supp. 7, 9 (S.D.N.Y. 1988) ("[a]lthough a [b]ankruptcy [c]ourt may extend the protection of an automatic stay to a [nondebtor] in some circumstances," no stay was in effect because bankruptcy court had not ordered one); see also *Rhode Island Hospital Trust National Bank* v. *Dube*, 136 F.R.D. 37, 39 (D.R.I. 1990); *In re Codfish Corp.*, 97 B.R. 132, 135 (Bankr. D.P.R. 1988); *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 903 (Bankr. C.D. Cal. 1987); *In re MacDonald/Associates, Inc.*, 54 B.R. 865, 867 (Bankr. D.R.I. 1985); *In re Precision Colors, Inc.*, 36 B.R. 429, 431 (Bankr. S.D. Ohio 1984); *W.W. Gay Mechanical Contractor, Inc.* v. *Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350 (Fla. 1989); *Collier* v. *Eagle-Picher Industries, Inc.*, 86 Md. App. 38, 48, 585 A.2d 256, cert. denied sub nom. *Corhart Refractories Co.* v. *Collier*, 323 Md. 33, 591 A.2d 249 (1991).

We note that most of these cases do not directly support the Appellate Court's conclusion in *Soboleski* that a motion to extend the automatic stay provision to a proceeding against a nondebtor must be brought in bankruptcy court. In *Collier* v. *Eagle-Picher Industries, Inc.*, supra, 86 Md. App. 49–50, the state court's jurisdiction to extend the stay was not directly at issue, and the court appears to have assumed that it had such jurisdiction, although it ultimately considered and denied a nondebtor's motion for a stay. In *In re Codfish Corp.*, supra, 97 B.R. 135, *In re All Seasons Resorts, Inc.*, supra, 79 B.R. 903, *In re MacDonald/Associates, Inc.*, supra, 54 B.R. 867–68, and *In re Precision Colors, Inc.*, supra, 36 B.R. 431, the respective bankruptcy courts held only that they had jurisdiction to extend the stay to a proceeding against a nondebtor pursuant to 11 U.S.C. § 105 (a), not that state courts lacked such jurisdiction. In *Rhode Island Hospital Trust National Bank* v.

U.S. Bank National Assn. *v.* Crawford

*Soboleski*, supra, 497. The Appellate Court found this case law persuasive "because [i]t is fundamental under federal bankruptcy law that the automatic stay operates for the benefit of the debtor and trustee only, and gives other parties interested in property affected by the automatic stay no substantive or procedural rights. . . . Only the bankruptcy court has the entire picture before it. It would be difficult, if not impossible, for a state trial court, which has only the immediate case before it, to determine the best interests of the bankruptcy estate.'' (Citation omitted; internal quotation marks omitted.) Id., 498. Because the defendant in *Soboleski*, a nondebtor who was seeking the protection of the automatic stay provision, had not applied for an extension of the automatic stay in the bankruptcy court, the Appellate Court concluded that the trial court properly had denied his motion for a stay. Id. Thus, although the court in *Soboleski* did not expressly conclude that the state trial court *lacked subject matter jurisdiction* to entertain the defendant's motion for a stay, it did suggest that the bankruptcy court has exclusive jurisdiction to entertain requests to extend the automatic stay to proceedings against nondebtors.

For the reasons that follow, we agree with the Appellate Court's decision in *Soboleski*. Specifically, we conclude that, although the courts of this state have jurisdiction to determine whether the automatic stay provision, by its own terms, applies to a proceeding in state court, they do not have jurisdiction to *modify* the application of the automatic stay provision pursuant to 11 U.S.C. § 105 (a) or 11 U.S.C. § 362 (d)[15] by *extending*

---

*Dube*, supra, 136 F.R.D. 39, the court held only that the automatic stay provision does not apply automatically to nondebtors, and did not address the issue of whether it had jurisdiction to extend the stay.

[15] Title 11 of the 2012 edition of the United States Code, § 362 (d), provides in relevant part: "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . . .''

U.S. Bank National Assn. *v.* Crawford

its application to proceedings to which it does not, by its own terms, automatically apply or by *barring* its application to proceedings to which it does automatically apply.

This issue of whether state courts have jurisdiction to modify the reach of the automatic stay provision was discussed at length by the United States Circuit Court of Appeals for the Ninth Circuit in *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000). In that case, the bankruptcy debtor, Robert Gruntz, was charged in state court with the criminal offense of failing to support his dependent children. Id., 1077. After he was convicted, Gruntz filed an appeal, claiming that the criminal prosecution was barred by the automatic stay provision. See generally *People* v. *Gruntz*, 29 Cal. App. 4th 412, 35 Cal. Rptr. 2d 55 (1994). The California Court of Appeal concluded that the automatic stay did not apply to criminal prosecutions and affirmed the conviction. See id., 421. Gruntz ultimately filed an ''adversary proceeding'' in the bankruptcy court, requesting that that court declare the criminal proceedings void because they violated the automatic stay provision. See *In re Gruntz*, supra, 1077. The bankruptcy court dismissed the proceeding on the ground that it was collaterally estopped by the judgment of the state court that the automatic stay provision did not apply. See id. On appeal, the United States District Court concluded that the bankruptcy court was bound by the state court's judgment that the automatic stay provision did not apply pursuant to the *Rooker-Feldman* doctrine.[16] See id., 1077–78. The defendant then

---

[16] ''[This] doctrine takes its name from *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). *Rooker* held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. See [*Rooker* v. *Fidelity Trust Co.*, supra, 415–16]. *Feldman* held that this jurisdictional bar extends to particular claims that are 'inextricably intertwined' with those a state court has already decided. See [*District of Columbia Court of Appeals* v. *Feldman*, supra, 486–87].'' *In re Gruntz*, supra, 202 F.3d 1078 n.1.

U.S. Bank National Assn. *v.* Crawford

appealed to the Ninth Circuit, claiming that a state court ruling on the extent of the automatic stay does not bind the bankruptcy court. Id., 1078.

The Ninth Circuit began its analysis by noting that "[t]he automatic stay is self-executing, effective upon the filing of the bankruptcy petition.'' Id., 1081. It further noted that "[t]he automatic stay is an injunction issuing from the authority of the bankruptcy court, and bankruptcy court orders are not subject to collateral attack in other courts. See *Celotex Corp.* [v. *Edwards*, 514 U.S. 300, 306–13, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)]. That is so not only because of the comprehensive jurisdiction vested in the bankruptcy courts . . . but also because persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'' (Citation omitted; internal quotation marks omitted.) *In re Gruntz*, supra, 202 F.3d 1082.

The Ninth Circuit concluded that "[a]ny state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay. While Congress has seen fit to authorize courts of the United States to restrain [state court] proceedings in some special circumstances, such as the automatic stay, it has in no way relaxed the old and [well established] judicially declared rule that state courts are completely without power to restrain [federal court] proceedings in in personam actions.'' (Internal quotation marks omitted.) Id.

"In sum, by virtue of the power vested in them by Congress, the federal courts have the final authority to determine the scope and applicability of the automatic stay. The [s]tates cannot, in the exercise of control over local laws and practice, vest [s]tate courts with power to violate the supreme law of the land. . . . Thus, the *Rooker-Feldman* doctrine is not implicated by collateral

U.S. Bank National Assn. *v.* Crawford

challenges to the automatic stay in bankruptcy. A bankruptcy court simply does not conduct an improper appellate review of a state court when it enforces an automatic stay that issues from its own federal statutory authority. In fact, a reverse *Rooker-Feldman* situation is presented when state courts decide to proceed in derogation of the stay, because it is the state court which is attempting impermissibly to modify the federal court's injunction.'' (Citation omitted; footnotes omitted; internal quotation marks omitted.) Id., 1083; see also id., 1084 (''modifying the automatic stay is not the act of a state court merely interpreting federal law; it is an intervention in the operation of an ongoing federal bankruptcy case, the administration of which is vested exclusively in the bankruptcy court'').[17] The Ninth Circuit ultimately concluded, however, that, because criminal proceedings against a debtor are expressly excepted from the automatic stay provision pursuant to 11 U.S.C. § 362 (b) (1), no modification of the stay was required for California to prosecute Gruntz, and, therefore, there was no need for the California court to seek the approval of the bankruptcy court before allowing the prosecution to go forward. Id., 1087.

We recognize that some cases addressing this issue may be interpreted as holding that, although the federal bankruptcy courts have the *final* say on whether the automatic stay provision should be modified, they do not have *exclusive jurisdiction* to make that determination. Rather, the state court may make that determination in the first instance, subject to later review by the bankruptcy court. See *Lockyer* v. *Mirant Corp.*, 398

---

[17] See also *In re Raboin*, 135 B.R. 682, 684 (Bankr. D. Kan. 1991) (''this court has exclusive jurisdiction to determine the extent and effect of the stay, and the state court's ruling to the contrary does not bar the debtor's present motion''); *In re Sermersheim*, 97 B.R. 885, 888 (Bankr. N.D. Ohio 1989) (''[i]t is the bankruptcy court *alone* that has the exclusive jurisdiction to determine questions involving the automatic stay'' [emphasis in original; internal quotation marks omitted]).

F.3d 1098, 1106 (9th Cir. 2005) (state courts ''have the power to decide whether the automatic stay applies to its proceedings,'' but if bankruptcy court ''later decides that the state court was incorrect, the state court proceedings in violation of the stay are void''); *Chao* v. *Hospital Staffing Services, Inc.*, 270 F.3d 374, 384 (6th Cir. 2001) (''[i]f . . . the suit before the [nonbankruptcy] court may proceed because an exception to the automatic stay authorizes prosecution of the suit, [that] court may enter needful orders not themselves inconsistent with the automatic stay,'' but if nonbankruptcy court's determination is erroneous, bankruptcy court can later declare entire action void). We think the better interpretation of these cases, however, is that a state court has jurisdiction to determine whether, under its plain terms, the automatic stay provision applies to the proceeding before it, not that the court has jurisdiction pursuant to 11 U.S.C. § 105 (a) or 11 U.S.C. § 362 (d) to modify the automatic stay. Indeed, in both *Lockyer* and *Chao*, the issue before the court was whether the proceeding before the nonbankruptcy court came within the statutory exception to the automatic stay provision for proceedings to enforce the government's ''police or regulatory power'' under 11 U.S.C. § 362 (b) (4); *Lockyer* v. *Mirant Corp.*, supra, 1107; *Chao* v. *Hospital Staffing Services, Inc.*, supra, 385; not whether the court should extend the application of the automatic stay or bar its enforcement pursuant to 11 U.S.C. § 105 (a) or 11 U.S.C. § 362 (d).

We conclude, therefore, that, although state courts have jurisdiction to interpret the provisions of the bankruptcy code and orders of the bankruptcy court to determine whether, under their plain terms, the automatic stay provision applies to a state court proceeding— which interpretations are subject to correction by the bankruptcy court—state courts do not have jurisdiction to change the status quo by modifying the reach of the automatic stay provision either by extending the stay

U.S. Bank National Assn. *v.* Crawford

to proceedings to which it does not automatically apply or by granting relief from the stay in proceedings to which it does automatically apply. Rather, any modification of the stay must be sought in bankruptcy court.

In *Equity One, Inc.* v. *Shivers*, supra, 150 Conn. App. 745, the Appellate Court noted that ''[c]ourts have extended the application of the automatic stay to non-debtors in unusual circumstances where doing so would further the purpose behind the stay.'' Id., 753. The court ultimately concluded that such unusual circumstances existed because the bankrupt defendant would be required to indemnify the nondebtor bank for any payments that the bank made to the committee for sale. Id., 754–55. In each case cited by the Appellate Court to support its conclusion, however, the court had implicitly recognized that the stay provision did not apply automatically to claims against nondebtors. See id., 753–54.[18] Indeed, several courts have expressly held to that effect. See, e.g., *Rhode Island Hospital Trust National Bank* v. *Dube*, 136 F.R.D. 37, 39 (D.R.I. 1990) (automatic stay

---

[18] See *Queenie, Ltd.* v. *Nygard International*, 321 F.3d 282, 287 (2d Cir. 2003) (''[t]he automatic stay can apply to [nondebtors], but normally does so only when a claim against the [nondebtor] will have an immediate adverse economic consequence for the debtor's estate''); *A.H. Robins Co.* v. *Piccinin*, 788 F.2d 994, 999 (4th Cir.) (''there are cases . . . [in which] a bankruptcy court may properly stay the proceedings against [nonbankrupt codefendants] but . . . in order for relief for such [nonbankrupt] defendants to be available . . . there must be unusual circumstances and certainly [s]omething more than the mere fact that one of the parties to the lawsuit has filed a [c]hapter 11 bankruptcy must be shown in order that proceedings be stayed against [nonbankrupt] parties'' [internal quotation marks omitted]), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986); *In re Jefferson County*, 491 B.R. 277, 284 (Bankr. N.D. Ala. 2013) (''[g]enerally, the automatic stay . . . applies only to certain actions taken or not taken with respect to a debtor, and not with respect to such action or inaction affecting other parties''); *In re North Star Contracting Corp.*, 125 B.R. 368, 370 (S.D.N.Y 1991) (automatic ''stay generally applies only to bar proceedings against the debtor''); *In re Metal Center*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983) (''[g]enerally, the automatic stay does not apply to proceedings against nondebtors'').

provision "does not apply automatically . . . to actions against a debtor's principals, partners, officers, employees, guarantors, or sureties" [internal quotation marks omitted]); *In re Richard B. Vance & Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003) ("extension of the stay to nonbankrupt parties is not automatic and must be requested affirmatively by the debtor"); *In re Bidermann Industries U.S.A., Inc.*, 200 B.R. 779, 782 (Bankr. S.D.N.Y. 1996) (automatic stay provision "does not apply automatically to stay actions against [nondebtors]"); *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 904 (Bankr. C.D. Cal. 1987) ("the automatic stay does not *automatically* encompass [codefendants]" [emphasis in original]); *Alvarez* v. *Bateson*, 176 Md. App. 136, 148, 932 A.2d 815 (2007) (automatic stay provision "applies automatically to debtors, but not to [nonbankrupt codefendants]"). We agree with these courts. When the stay provision does not apply automatically to a proceeding, action by the bankruptcy court is required to extend the application of the stay. See *In re Richard B. Vance & Co.*, supra, 697 (extension of stay to nonbankrupt parties "must be requested affirmatively by the debtor"); *In re Bidermann Industries U.S.A., Inc.*, supra, 782 (to stay action against nondebtor, "[t]he debtor must obtain a stay order from the bankruptcy court"); *In re All Seasons Resorts, Inc.*, supra, 903 (extension of automatic stay provision to nondebtors "requires the filing of an appropriate adversary proceeding under [11 U.S.C. § 105 (a) and 11 U.S.C. § 362 (d)] to achieve the desired result"); *W.W. Gay Mechanical Contractor, Inc.* v. *Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350 (Fla. 1989) (nondebtor codefendant "must apply to and obtain [stay] from the bankruptcy court"); *Alvarez* v. *Bateson*, supra, 148 ("[A] court must make a determination as to whether the automatic stay extends to cover a [nonbankrupt] codefendant. It follows that each determination should be made by the bankruptcy court supervising the debtor's estate upon request of

333 Conn. 731 NOVEMBER, 2019 759

U.S. Bank National Assn. *v.* Crawford

the debtor, because it is the debtor's interests that are being protected by the stay.''). As we explained, the bankruptcy court has *exclusive* jurisdiction to extend the stay to proceedings to which it does not automatically apply. We conclude, therefore, that the Appellate Court in *Shivers* lacked jurisdiction to extend the stay provision to motions to recover a committee for sale's fees and expenses from a nondebtor bank. Accordingly, we conclude that *Shivers* must be overruled.

In the present case, the trial court relied exclusively on *Shivers* when it denied the plaintiff in error's motion for fees and expenses. We conclude, therefore, that the case must be remanded to the trial court so that it may vacate the order denying the plaintiff in error's motion and entertain that motion on the merits.

The writ of error is granted and the case is remanded with direction to vacate the order denying the plaintiff in error's motion for fees and expenses, and to conduct further proceedings according to law.

In this opinion PALMER, D'AURIA and ECKER, Js., concurred.

McDONALD, J., with whom MULLINS and KAHN, Js., join, dissenting. I disagree with the majority that the trial court's decision denying the motion for statutory fees and expenses, *without prejudice to refiling that motion at a later date*, is an immediately appealable ruling under the second prong of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). The trial court's determination that the automatic stay provision of the federal Bankruptcy Code, 11 U.S.C. § 362 (a) (1) (2012), applies so as to delay satisfaction of such a request is not one that "so concludes the rights of the parties that further proceedings cannot affect them."[1] *State* v. *Curcio*, supra, 31. In concluding otherwise, the majority

---

[1] "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding,

U.S. Bank National Assn. *v.* Crawford

substitutes a policy analysis for the limited exceptions to the final judgment rule. This approach exacerbates the already murky state of our final judgment jurisprudence, a consequence that is not only unfortunate but unnecessary given other procedural avenues available to address this matter. For the reasons that follow, I would dismiss the writ of error for lack of a final judgment.

This court has explained that the exception to the final judgment rule on which the majority relies "requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be *irretrievably lost* and the [parties] *irreparably harmed* unless they may immediately appeal." (Emphasis added; internal quotation marks omitted.) *Blakely* v. *Danbury Hospital*, 323 Conn. 741, 746, 150 A.3d 1109 (2016). Under this "narrow" exception; (internal quotation marks omitted) id., 752; an interlocutory order will be deemed final for purposes of appeal "if it involves a claimed right the legal and practical value of which would be *destroyed* if it were not vindicated before trial." (Emphasis added; internal quotation marks omitted.) *State* v. *Bacon Construction Co.*, 300 Conn. 476, 481–82, 15 A.3d 147 (2011). "[E]ven when an order impinges on an existing right, if that right is subject to vindication after trial, the order is not appealable under the second prong of *Curcio*." *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 231, 901 A.2d 1164 (2006).

Under these parameters, the first step is to identify the existing right at issue. In the present case, that right is prescribed by statute. General Statutes § 49-25 provides in relevant part: "[I]f for any reason the

or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." *State* v. *Curcio*, supra, 191 Conn. 31. Only the second prong of *Curcio* is at issue in the present case.

[foreclosure by] sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and be taxed with the costs of the case. . . .'' Thus, the right at issue is simply the right of the plaintiff in error, Douglas M. Evans, as the committee for sale, to be paid such expenses and costs.

The next step is to determine whether that right is irretrievably lost and the plaintiff in error is irreparably harmed due to the trial court's decision denying his request for payment of such fees and costs, without prejudice to renewing that request once the automatic bankruptcy stay is lifted. The answer to that question is ''no.'' The plaintiff in error's right to recover fees and expenses remains intact, undiminished in any respect. Compare *Perry* v. *Perry*, 312 Conn. 600, 620, 95 A.3d 500 (2014) (trial court's order granting only portion of fees that children's attorney owed to another attorney who represented her in related postjudgment proceeding substantially impaired her right to her own fees and she could not vindicate that right in separate proceeding should other attorney sue to recover his fees), and *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 232–34 (order denying plaintiffs' motion for prepleading security under statute prohibiting unauthorized insurer without assets in Connecticut from defending action until it posts security would cause irreparable harm if plaintiffs cannot appeal until conclusion of trial because court will be unable to restore plaintiffs' right either to have defendants post security or to obtain default judgment against defendants if they fail to do so), with *Incardona* v. *Roer*, 309 Conn. 754, 756–57, 763, 73 A.3d 686 (2013) (trial court's order imposing monetary sanctions on plaintiffs for failure to comply with discovery order did not so conclude rights of parties that further proceedings could not affect them when court indicated that it was prepared to modify order if later developments warranted

such action), and *New England Savings Bank* v. *Nicotra*, 230 Conn. 136, 139–40, 644 A.2d 909 (1994) (trial court's order appointing receiver of rents in foreclosure action did not so conclude rights of parties because, ''[a]lthough a receivership takes designated funds out of the control of the mortgagor, it does not vest their control in the foreclosing mortgagee, who has no claim upon the income and profit in [the receiver's] hands as such; since the funds are legally in the possession of the court subject to whatever disposition it may order'' [internal quotation marks omitted]).

The mere delay in the plaintiff in error's receipt of his fees and costs does not destroy the legal and practical value of the right to recover them. It may impinge on the *existing* right, but that right is subject to vindication once the stay is lifted. See generally *Rostad* v. *Hirsch*, 128 Conn. App. 119, 125, 15 A.3d 1176 (2011) (''to decide whether an interlocutory ruling has caused an appellant to suffer irreparable harm, it is relevant to inquire whether the trial court, at the time of the final judgment, will be able to provide remedial relief''). If a delay in obtaining relief was, in and of itself, an injury sufficient to authorize an interlocutory appeal, we would not have held, for example, that ''the denial of a statute of limitations defense is not itself an appealable final judgment . . . .'' *Santorso* v. *Bristol Hospital*, 308 Conn. 338, 354 n.9, 63 A.3d 940 (2013); accord *Blakely* v. *Danbury Hospital*, supra, 323 Conn. 744, 753 (denial of motion for summary judgment on ground that jurisdictional time limitation had lapsed did not satisfy second prong of *Curcio*). Instead, vindication of the defendant's right not to have to defend against a stale claim must await the close of trial. We strictly adhere to the final judgment rule even though the defendant may incur significant litigation expenses defending against the merits of a claim that ultimately is deemed time barred.

U.S. Bank National Assn. *v.* Crawford

The majority's decision that the second prong of *Curcio* is satisfied characterizes the right sought to be vindicated as the plaintiff in error's "entitle[ment] to recover fees and costs *immediately upon filing a proper and timely motion for fees*." (Emphasis in original.) The statute giving rise to the plaintiff in error's right, however, includes no such temporal requirement, and it is not the proper function of this court to engraft that language.[2] See *State* v. *Obas*, 320 Conn. 426, 436, 130 A.3d 252 (2016) (noting that, "[i]n the absence of any indication of the legislature's intent concerning this issue, we cannot engraft language onto the statute for [i]t is not the function of the courts to enhance or supplement a statute containing clearly expressed language" [internal quotation marks omitted]). The majority points to no authority that entitles the plaintiff in error to interest on those fees and costs during the intervening period between the filing of the motion and the court's order granting that motion, or until payment is made, either of which might imply the right to immediate payment.[3]

On the basis of its characterization of the right as one to immediate payment, the majority concludes that, in the absence of an interlocutory appeal, there will be irreparable harm to that right because, if the plaintiff in error cannot seek review of the order until the automatic stay is terminated and the trial court rules on the merits of his motion, that right will be "forever lost

[2] Section 49-25 obviously does not specify a time limitation in which to make payment. Even if we could infer that payment must be made within a "reasonable" period of time in the absence of a specified period, the question would remain whether the typical duration of an automatic bankruptcy stay; see footnote 4 of this dissenting opinion; would constitute an unreasonable delay.

[3] Of course, if the plaintiff in error were entitled to interest, then he clearly could not show that the delay in payment while the stay is pending would cause irreparable harm.

. . . .''[4] The fact that the plaintiff in error will have to wait to vindicate his right to receive fees is precisely what is required. This is so because future developments in the trial court, namely, the receipt of his fees, will render the interlocutory appeal unnecessary.

In reality, the majority does not apply the second prong of *Curcio* but instead creates a third, public policy prong. That approach raises three problems. First, the legislature could have authorized immediate review of a writ of error implicating a matter of public interest in the absence of a final judgment, as it has for the parties to the case, but it did not. See General Statutes § 52-265a (a) (''any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court'').

Second, this court has emphatically rejected the majority's approach: ''To be clear, policy concerns are not a factor under either prong of *Curcio*, and, accordingly, it would be inappropriate to rely on policy alone to justify allowing an appeal under *Curcio*.'' *Woodbury*

---

[4] Ironically, but for the filing of the present writ of error, the plaintiff in error would have received his fees and costs long before this court could have issued its decision on this writ. The defendant in error, the named defendant in the underlying foreclosure action, Jacquelyn N. Crawford, filed for chapter 13 bankruptcy protection on February 8, 2017, and the bankruptcy stay was lifted less than six months later, on July 28, 2017. The committee deed was approved by the trial court on September 26, 2017, and an amended motion for supplemental judgment was filed on November 15, 2017, at which time the defendant in error, the plaintiff in the underlying foreclosure action, U.S. Bank National Association, as Trustee, requested that the committee's fees and costs of $5839.39 be paid. The trial court denied that motion because of the pendency of this writ of error, and ordered no payment until the conclusion of this appeal. Although the automatic bankruptcy stay lasted less than six months, a period of five months lapsed between the time that the trial court denied the plaintiff in error's motion for the fees and the date on which he filed his appellate brief in this court.

U.S. Bank National Assn. *v.* Crawford

*Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 762 n.10, 48 A.3d 16 (2012). Although this court has previously cited public policy reasons to bolster our conclusion that immediate review is warranted under the first prong of *Curcio*, we have made clear that those reasons did not displace the requirement of satisfying *Curcio*. See id., 773 ("The discovery order in the present case constitutes a final judgment because it terminated a separate and distinct proceeding and thus satisfied the first prong of *Curcio*. Additionally, it implicates important policy considerations that militate against requiring an officer of the court who also is not a party to the underlying action to be held in contempt of court in order to be able to seek appellate review."); see also id., 762 ("[f]or these reasons alone, then, the discovery order in the present case is a final judgment because it satisfies the first prong of *Curcio*, just as the discovery order in *Abreu* [v. *Leone*, 291 Conn. 332, 968 A.2d 385 (2009)] constituted a final judgment because it arose out of a separate proceeding brought by a nonparty"). Public policy has been considered in our analysis under the second prong of *Curcio* only insofar as such policy illuminated the contours of a common-law right claimed to be harmed. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 785–87, 865 A.2d 1163 (2005) (explaining why purpose of absolute immunity under common law, protecting against threat of suit, compels conclusion that denial of summary judgment on ground of such immunity gives rise to immediately appealable final judgment due to irreparable harm). The majority's suggestion that this court's decision in *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 520 A.2d 605 (1987), sanctioned such an approach misconstrues that case. See id., 255–56 (explaining that, although in some instances federal courts of appeals have entertained appeals from discovery orders presenting issues of claimed violations of certain privileges, "[t]his court has no discretionary

U.S. Bank National Assn. *v.* Crawford

jurisdiction comparable to that given the federal courts by [28 U.S.C.] § 1292 [b] to entertain appeals from interlocutory orders, except as provided [for public interest appeals] in . . . § 52-265a''). Although our final judgment jurisprudence may not be a model of clarity, we should not muddy those waters further to accommodate the present case.

The only unusual feature of the present case is that the legal issue—whether the automatic stay provision of the Bankruptcy Code applies to § 49-25—could avoid review in every case because a reviewing court would never be able to afford any practical relief once the stay has been lifted. However, if the legal issue were rendered moot once the stay is lifted, for all of the reasons identified by the majority, such a circumstance would appear to satisfy the capable of repetition, yet evading review exception to mootness. See *Wendy V.* v. *Santiago*, 319 Conn. 540, 545–46, 125 A.3d 983 (2015) (setting forth parameters of exception). Insofar as the majority contends that the issue might not be reviewable because the plaintiff in error would no longer be aggrieved by the time judgment is final, this result proves my point.[5]

_____

[5] There is case law from this court suggesting that, even in the absence of aggrievement, we could exercise jurisdiction if the party seeking review is in a class whose interests are capable of repetition, yet evading review. See *Kulmacz* v. *Kulmacz*, 177 Conn. 410, 412–13, 418 A.2d 76 (1979) (''A requisite element of appealability is that the party claiming error in the decision of the trial court be aggrieved . . . for if a party attempting to appeal can by no possibility suffer injury by the judgment, he should not be permitted to appeal. . . . There are few exceptions to this basic tenet of appellate practice, and those anomalies involve either representatives of parties . . . or persons whose interest, albeit terminated, is capable of repetition, yet evading review. . . . The plaintiff . . . is not an aggrieved person whose interests will be adversely affected by an unfavorable judgment. . . . There is nothing in the record to show that the plaintiff has appeared for other interests in a representative capacity; nor is she in a class whose interests have been described as capable of repetition.'' [Citations omitted; internal quotation marks omitted.]); see also *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995) (explaining that, in context of capable of repetition, yet evading review requirement, ''[t]he doctrine of mootness

333 Conn. 731 NOVEMBER, 2019 767

U.S. Bank National Assn. *v.* Crawford

This brings me to the third problem with the majority's approach. There is no reason to expand and muddy our final judgment jurisprudence in this case because there were other avenues of relief available to the plaintiff in error. Counsel for the plaintiff in error was aware of our Appellate Court's decision in *Equity One, Inc.* v. *Shivers*, 150 Conn. App. 745, 93 A.3d 1167 (2014), on which the trial court relied to conclude that the automatic stay applies to a motion for fees and expenses by a committee for sale. As his firm had done in a similar case, counsel could have sought a declaratory judgment from the bankruptcy court that the stay does not apply to the fees and costs in the present case. See *In re Tasillo*, United States Bankruptcy Court, Docket No. 14-21683 (ASD) (D. Conn. January 6, 2015) (declaratory judgment in favor of committee of sale); *CT Tax Liens 2, LLC* v. *Tasillo*, Superior Court, judicial district of Hartford, Docket No. CV-12-6035369-S (January 29, 2015) (granting motion for fees before stay was lifted in light of declaratory judgment). If the plaintiff in error wanted to have *Shivers* overruled so as to avoid such proceedings in other cases, he could have filed an action for a declaratory judgment in state court to obtain such relief.[6] The time and expense of pursuing such avenues surely are not greater than if pursuing an appeal.

is rooted in the same policy interests as the doctrine of standing, namely, to assure the vigorous presentation of arguments concerning the matter at issue"). I express no opinion on this matter.

[6] I am not suggesting that a trial court would have authority to overrule *Shivers* in a declaratory judgment action or that such an action properly would be pursued by the plaintiff in error after his request for fees had been denied without prejudice. I am simply suggesting that, knowing that the trial court would have been bound by *Shivers*, the plaintiff in error could have sought a declaration that *Shivers* conflicts with federal law, before filing a request for fees that inevitably would be denied, and that there would have been no jurisdictional impediment to appellate review of that decision, as there is under the present procedural posture. See *Bysiewicz* v. *DiNardo*, 298 Conn. 748, 756, 6 A.3d 726 (2010) (A declaratory judgment action "requires that the plaintiff be in danger of a loss or of uncertainty as to [his] rights or other jural relations and that there be a bona fide and substantial question or issue in dispute or substantial uncertainty

U.S. Bank National Assn. *v.* Crawford

I concede that there is ample reason to question the vitality of *Shivers*, as it is in conflict with the conclusions reached by several federal bankruptcy courts, whose primary charge is to interpret and apply federal bankruptcy law. See *In re Tasillo*, supra, United States Bankruptcy Court, Docket No. 14-21683; *In re VMC Real Estate, LLC*, Docket No. 11-20452 (ASD), 2012 WL 836724, *2 (Bankr. D. Conn. March 9, 2012); *In re Rubenstein*, 105 B.R. 198, 204 (Bankr. D. Conn. 1989); see also *In re Danise*, 112 B.R. 492, 494 and n.2 (Bankr. D. Conn. 1990). But see *In re Hooker*, United States Bankruptcy Court, Docket No. 18-20504 (JJT) (D. Conn. June 27, 2018) (concluding that stay applies but relief may be afforded). Given such tension, I share the majority's concern about the viability of *Shivers* going forward. However, in the absence of jurisdiction over the writ, this court is compelled to dismiss the writ of error without reaching its merits.

Accordingly, I respectfully dissent.

of legal relations . . . . [D]eclaratory relief is a mere procedural device by which various types of substantive claims may be vindicated." [Internal quotation marks omitted.]).

Although we have not yet had occasion to address this question, it appears to me that the plaintiff in error also could have asked the trial court to certify the question to this court of whether *Shivers* was properly decided. See General Statutes § 52-235 (a) ("[t]he Superior Court, or any judge of the court, with the consent of all parties of record, may reserve questions of law for the advice of the Supreme Court or Appellate Court in all cases in which an appeal could lawfully have been taken to said court had judgment been rendered therein"). Although this statute limits such reservations to "cases in which an *appeal* could lawfully have been taken to said court had judgment been rendered therein"; (emphasis added) General Statutes § 52-235 (a); it appears that this limitation is simply intended to preclude reservations in cases in which review is not available after final judgment. In *Redding Life Care, LLC* v. *Redding*, 331 Conn. 711, 726, 207 A.3d 493 (2019), this court recently concluded that General Statutes § 51-197f, which governs petitions for certification to appeal after a final determination of "any appeal" from the Appellate Court, included a writ of error.